MOUNT VERNON FIRE INSURANCE COMPANY *v.*
JAMES P. MORRIS III ET AL.
(AC 25619)

Lavery, C. J., and Schaller and Mihalakos, Js.

Argued May 5—officially released August 2, 2005

*Kevin E. Creed*, for the appellant (intervening plaintiff Jane Doe).

*Mark A. Newcity*, with whom, on the brief, was *Robert P. La Hait*, pro hac vice, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The intervening plaintiff, Jane Doe[1] (intervenor), appeals from the judgment of the trial court rendering partial summary judgment in favor of the plaintiff, Mount Vernon Fire Insurance Company, in this action seeking a determination of whether the plaintiff is obligated to defend or to indemnify the defendants, James P. Morris III and Pediatric Day and Night Care, LLC (Pediatric), in an underlying tort action pursuant to a policy of commercial general liability insurance (policy) issued by the plaintiff to the defendants. The intervenor claims that the court improperly rendered partial summary judgment because (1) the doctrines of res judicata and collateral estoppel applied to preclude relitigation of facts and issues previously determined in the underlying action, (2) there were genuine issues as to material facts and (3) the court misapplied the holding of *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 846 A.2d 849 (2004), to the facts at hand. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant. On December 26, 2001, the intervenor, acting on behalf of her minor son, filed the underlying action against the defendants. *Doe* v. *Morris*, Superior Court, judicial district of Waterbury, Docket No. UWY CV02 0168982S (July 18, 2003). She claimed that her son, while enrolled for day care services at Pediatric between August 23, 2000, and January 3, 2001, had been sexually abused by Morris, who is Pediatric's owner and director. The intervenor's complaint included seven counts alleging the following causes of action: sexual assault; battery; false imprisonment; intentional infliction of emotional distress; negligent infliction of emo-

---

[1] Because the underlying action involved allegations of sexual abuse of the intervenor's minor son by the defendant James P. Morris III, the intervenor has proceeded pseudonymously in both that action and the present one. See General Statutes § 54-86e.

tional distress; violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.; and negligent supervision.[2] Each of these claims had as its factual basis the acts of sexual abuse alleged to have been perpetrated by Morris on the intervenor's son. The intervenor sought compensatory and punitive damages in unspecified amounts, and costs and attorney's fees. On February 4, 2002, the intervenor filed two motions for default in the underlying action due to the defendants' failure to appear. On February 20, 2002, those motions were granted, and the court clerk entered defaults.

On August 29, 2002, the plaintiff commenced the present declaratory judgment action with a four count complaint. The plaintiff alleged that it had issued a commercial general liability insurance policy to Pediatric as the named insured and to Morris as its owner, which was in effect between September 1, 1999, and November 15, 2000.[3] The plaintiff directed the court to provisions of the policy that the plaintiff claimed precluded coverage as to the intervenor's claims against the defendants, and, in counts one and two, requested that the court declare that the plaintiff had no duty to defend the defendants in the underlying action or to indemnify them in the event of an adverse judgment. In counts three and four, the plaintiff sought declarations that the policy had been canceled prior to its expiration[4] and that Morris had made material misrepresentations when completing the application for the policy.[5] On December 6, 2002, the intervenor filed a motion

[2] The first six counts were directed at Morris and the seventh at Pediatric.

[3] The original policy and a renewal policy, as well as the complaint in the underlying action, were attached as exhibits to the plaintiff's complaint.

[4] According to the plaintiff, the initial policy issued to the defendants was renewed and the policy period extended to March 23, 2001, but the policy was canceled prematurely on November 15, 2000, due to the defendants' failure to pay the required premiums.

[5] The plaintiff alleged that the defendants had failed to disclose prior citations from the department of public health relating to day care violations

to intervene in this action, which the court, *Holzberg, J.*, granted on January 5, 2003.

On July 18, 2003, the court, *Pittman, J.*, rendered a default judgment in the underlying action. Judge Pittman drafted and signed a judgment file stating, inter alia, that "the well pleaded allegations of the complaint are taken as proved, and the issue is solely one of damages." On the basis of the intervenor's testimony and the exhibits submitted, Judge Pittman determined that the intervenor was entitled to recover total damages of $280,910.[6]

On March 25 and April 19, 2004, respectively, the intervenor and the plaintiff filed motions for summary judgment in the present matter. A hearing was held on both motions on June 14, 2004. On July 1, 2004, the court, *Hon. Joseph T. Gormley, Jr.*, denied the intervenor's motion and granted the plaintiff's motion as to counts one and two only.[7]

In his memorandum of decision, Judge Gormley discussed the three types of coverage afforded by the policy—general liability, professional liability and child molestation liability—and found that several provisions, falling within each type of coverage, operated to preclude coverage to the defendants for the claims raised in the underlying action. He noted that the factual predicate for each count alleged in the underlying action, although characterized in part as negligence, was behavior that necessarily was intentional and criminal,[8] namely, the acts of sexual abuse perpetrated on

and that if the plaintiff had been aware of those violations, it would not have issued the policy.

[6] The total is comprised of the following: as to counts one through five, $26,910 in economic damages and $250,000 in noneconomic damages; as to counts six and seven, $2000 in compensatory damages, and $2000 in punitive damages and attorney's fees.

[7] Judge Gormley's order specifically denied the plaintiff's motion for summary judgment as to count four but did not address count three.

[8] Judge Gormley repeatedly noted that there was no evidence that Morris' acts were anything other than criminal and intentional, and characterized

the intervenor's son by Morris. Judge Gormley concluded that the policy by its terms did not apply to provide general liability coverage to the defendants for losses resulting from such conduct.[9] Judge Gormley opined further that the conduct at issue did not arise out of the defendants' business, a prerequisite under the policy to general liability coverage. Additionally, he concluded that the injury alleged was not caused by any of an enumerated list of offenses for which general liability coverage was provided.[10]

Regarding professional liability coverage, Judge Gormley considered the conduct alleged to fall within specific, unambiguous professional liability exclusions for "any dishonest . . . criminal or malicious acts or omissions of the insured, any partner or employee," "actions for . . . assault or battery"[11] and "actual or alleged sexual misconduct of the insured or the insured's employees." (Internal quotation marks omitted.) As to child molestation liability coverage, he found that the defen-

"[c]alling it anything else [as] a transparent attempt to trigger insurance coverage."

[9] Specifically, the court determined that the injury alleged was not caused by an "occurrence," which is defined by the policy as "an accident." (Internal quotation marks omitted.) Moreover, the policy excluded general liability coverage for injuries "expected or intended from the standpoint of the insured." (Internal quotation marks omitted.)

[10] Although false imprisonment was included among the enumerated offenses, Judge Gormley reasoned that "[a]ny sexual assault of a minor would necessarily consist of, or involve, some sort of intentional confinement," and he construed the intervenor's allegations of false imprisonment, like her allegations of negligence, as another "transparent attempt to trigger coverage." As noted by Judge Gormley, "to allow coverage under such circumstances would allow alleged sexual offenders like Morris insurance protection for sexually molesting children and, thus, in effect permit him to transfer the responsibility for his deeds onto the shoulders of the innocent insuring public."

[11] The court stated that an endorsement to the policy similarly disallowed coverage "for any claim, demand or 'suit' based on [a]ssault and [b]attery," and coverage and defense for "claims, accusations or charges of negligent hiring, placement, training or supervision arising from actual or alleged assault or battery . . . ." (Internal quotation marks omitted.) Judge Gormley found the endorsement applicable as well.

dants, insofar as they were either the "named insured" or a "person insured" as defined by the policy, were explicitly excluded from coverage.[12] As the court explained: "The purpose of [child molestation liability] coverage is to protect the insured against liability arising out of sexual abuse of third parties by the insureds' employees, [but] [i]n this case, the alleged sexual abuse occurred at the hands of the person insured, Morris." In sum, Judge Gormley found "ample support for the [rendering] of summary judgment [in favor of] the plaintiff" because the policy provisions taken "together show[ed] a clear pattern of the carrier not to provide coverage for the sexual assault of children."[13]

Regarding the intervenor's argument that this court's decision in *DaCruz* v. *State Farm Fire & Casualty Co.*, 69 Conn. App. 507, 794 A.2d 1117 (2002), rev'd, 268 Conn. 675, 846 A.2d 849 (2004), required that preclusive effect be given to Judge Pittman's findings, implicit in her judgment that the allegations of the intervenor's complaint had been proven, that both negligent and intentional misconduct had occurred, Judge Gormley observed that our holding in that case had since been unanimously overruled by our Supreme Court such that *DaCruz* "is now totally supportive of the plaintiff's position." Judge Gormley also rejected the intervenor's claim that the language of a policy endorsement created

---

[12] "Pediatric Day/Night Care, LLC," was designated in the policy declarations as the named insured. The child molestation liability portion of the policy by its terms does not apply "to any actual or alleged child molestation by the named insured or PERSONS INSURED . . . ." That portion provides further that "if the named insured is designated in the DECLARATIONS as other than an individual, partnership or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such" are persons insured. According to Judge Gormley, "[t]hat would specifically apply to James P. Morris III, as he signed the insurance application of Pediatric as its executive director."

[13] As to the plaintiff's claim of misrepresentation on the policy applications, the court denied the plaintiff's motion for summary judgment after finding that there were disputed questions of material fact pertaining to that claim.

an ambiguity regarding child molestation liability coverage.

Following Judge Gormley's rendering of partial summary judgment, the intervenor appealed. Additional facts and procedural history will be provided as necessary.

I

As a preliminary matter, we must address the matter of whether the intervenor has appealed from a final judgment. We conclude that although the court's ruling did not dispose of all of the counts of the plaintiff's complaint, it nevertheless is an immediately appealable final judgment under the rule of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983).

"The right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . The statutory right to appeal is limited to appeals by aggrieved parties from final judgments. General Statutes §§ 52-263, 51-197a; see Practice Book § 3000 [now § 61-1]. Because our jurisdiction over appeals, both criminal and civil, is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citations omitted.) *State* v. *Curcio*, supra, 191 Conn. 30.

"A judgment that disposes of only a part of a complaint is not a final judgment." *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 262 Conn. 240, 246, 811 A.2d 1272 (2002). Although our rules of practice set forth certain circumstances under which a party may appeal from a judgment that disposes of less than all of the parts of a complaint; see Practice Book §§ 61-3, 61-4; none of those circumstances are present here. Accordingly, to be an appealable final judgment, the court's

order granting partial summary judgment must meet the test articulated by our Supreme Court in *State* v. *Curcio*, supra, 191 Conn. 31. Pursuant to that test, "[a]n otherwise interlocutory ruling can be immediately appealed in two circumstances: (1) where the order terminates a separate and distinct proceeding; or (2) where the order so concludes the rights of the parties that further proceedings cannot affect them." *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, supra, 247. We conclude that under the circumstances of this case, the second prong of *Curcio* is satisfied such that the court's ruling is immediately appealable.

To reiterate, the court did not rule explicitly as to count three, in which the plaintiff alleged that the policy terminated prematurely due to nonpayment of premiums, and it denied summary judgment as to count four, in which the plaintiff claimed that there were material misrepresentations on the application for the policy. If either or both of these counts ultimately are decided in the plaintiff's favor, the result would be merely that additional support exists for the court's conclusion at present that no insurance coverage is available for the claims asserted by the intervenor. Conversely, if either or both of the remaining counts ultimately are decided in the defendants' favor, the end result would remain unchanged as coverage still would be unavailable on the basis of the court's rulings as to counts one and two. Compare *C & P Excavating Contractors, Inc.* v. *Ardmare Construction Co.*, 37 Conn. App. 222, 227, 655 A.2d 278 (1995) (no final judgment under *Curcio* where ruling on remaining claims could impact parties' liability, amount of damages). Consequently, we conclude that there is a final judgment pursuant to the second prong of *Curcio* such that this matter properly is before us. We now turn to the claims on appeal.

## II

The intervenor claims first that Judge Gormley, in rendering partial summary judgment in favor of the

plaintiff, improperly relitigated facts and issues previously decided by Judge Pittman when the latter rendered a default judgment in the underlying action. According to the intervenor, the doctrines of res judicata and collateral estoppel should have applied to preclude Judge Gormley from making the contested rulings. We disagree.[14]

In particular, the intervenor claims that Judge Gormley improperly revisited the issues of whether Pediatric negligently supervised Morris and whether the intervenor's son had been falsely imprisoned. Additionally, she argues that the plaintiff "had an absolute opportunity to fully and fairly litigate the issues in the underl[ying] action" because it was notified[15] of the matter and was invited to participate therein, but declined to do so.

Although the intervenor alludes to both res judicata and collateral estoppel, her arguments sound in the latter doctrine rather than the former. "Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a

[14] The plaintiff argues that the intervenor did not raise the doctrines of collateral estoppel or res judicata at trial and, therefore, should not be permitted to argue them on appeal. Our review of the record demonstrates that although the intervenor did not provide a detailed preclusion analysis in any of her trial briefs, she did argue repeatedly to the court that the plaintiff was bound by Judge Pittman's judgment and that this court's decision in *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 69 Conn. App. 507, a case involving collateral estoppel, was applicable. Furthermore, the court addressed the applicability of *DaCruz* in its memorandum of decision, albeit briefly. Under the circumstances, we conclude that the issue was adequately raised and addressed at trial and, consequently, is reviewable. See *Ammirata* v. *Zoning Board of Appeals*, 264 Conn. 737, 743–46, 826 A.2d 170 (2003) (when record adequate, procedural history of matter uncontested, lack of precise preclusion analysis by trial court does not preclude review because issue presents legal question).

[15] According to the intervenor, the plaintiff was notified of the underlying action by letters sent to its counsel and to "S & H Smith, General Management Agency for [the plaintiff]." Moreover, she claims that the plaintiff's counsel was sent a copy of the default judgment.

continuum. . . . Whether the . . . doctrine of collat-
eral estoppel [is applicable] is a question of law for
which our review is plenary. . . . The fundamental
principles underlying the doctrine are well established.
Collateral estoppel, or issue preclusion, is that aspect
of res judicata which prohibits the relitigation of an
issue when that issue was *actually litigated* and *neces-
sarily determined* in a prior action between the same
parties upon a different claim."[16] (Citation omitted;
emphasis in original; internal quotation marks omitted.)
*Bouchard* v. *Sundberg*, 80 Conn. App. 180, 186–87, 834
A.2d 744 (2003). Like res judicata, collateral estoppel
is "based on the public policy that a party should not
be able to relitigate a matter that it already has had a
fair and full opportunity to litigate." *In re Application
for Writ of Habeas Corpus by Dan Ross*, 272 Conn. 653,
661, 866 A.2d 542 (2005).

It is clear that the plaintiff was not a party to the
proceedings before Judge Pittman. Nevertheless, "[c]ol-
lateral estoppel may be invoked against a party to a
prior adverse proceeding *or against those in privity
with that party*." (Emphasis added; internal quotation
marks omitted.) *Waterbury Hotel Equity, LLC* v. *Water-*

---

[16] Related but distinct, "[t]he doctrine of res judicata holds that an existing
final judgment rendered upon the merits without fraud or collusion, by a
court of competent jurisdiction, is conclusive of causes of action and of
facts or issues thereby litigated as to the parties and their privies in all other
actions in the same or any other judicial tribunal of concurrent jurisdiction.
. . . If the same cause of action is again sued on, the judgment is a bar
with respect to any claims relating to the cause of action which were actually
made or which might have been made." (Internal quotation marks omitted.)
*Efthimiou* v. *Smith*, 268 Conn. 499, 506, 846 A.2d 222 (2004). Here, although
there are similarities in the relevant issues, the claims raised in the present
action differ from those raised in the underlying action. Specifically, the
underlying action raised statutory and tort claims and sought to determine
whether the defendants were liable for the injuries suffered by the interve-
nor's son. The present action involves the interpretation of an insurance
policy and seeks to determine whether the plaintiff has a contractual duty
to defend or indemnify the defendants.

*bury*, 85 Conn. App. 480, 493, 858 A.2d 259, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). "While the concept of privity is difficult to define precisely, it has been held that a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." (Internal quotation marks omitted.) *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 22 n.6, 783 A.2d 1157 (2001). "In determining whether privity exists, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Internal quotation marks omitted.) *Lundborg* v. *Lawler*, 63 Conn. App. 451, 456, 776 A.2d 519 (2001), quoting *Mazziotti* v. *Allstate Ins. Co.*, 240 Conn. 799, 814, 695 A.2d 1010 (1997).

The judgment in the underlying action, therefore, cannot have any preclusive effect in the present action unless it is established that the plaintiff in this action and the defendants were in privity. Our Supreme Court's decision in *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 268 Conn. 675, however, forecloses such a conclusion. In that case, a nearly identical dynamic was present,[17] namely, an injured plaintiff obtained a default judgment against a tortfeasor and, in a later action against the tortfeasor's insurance carrier, attempted to assert the default judgment as a bar to relitigation of the issue of the tortfeasor's intent. In *DaCruz*, similar to the present matter, the default judgment had resulted in anomalous findings that the tortfeasor had acted both negligently and intentionally when engaged in a

---

[17] We address the intervenor's claim that *DaCruz* is factually distinguishable in part IV.

purposeful assault against his victim. The court presiding over the subsequent action, in which insurance coverage for damages caused by the assault was at issue, considered the finding of negligence untenable and disregarded it. On appeal, our Supreme Court rejected the assault victim's assertion that the court was bound by the prior judgment, including the finding of negligence.

As explained by the court, the insurer and the tortfeasor were not in privity for purposes of the first action because their interests were fundamentally different. Specifically, the insurer's "primary and overriding interest was not in establishing that [the tortfeasor] was not liable to the [victim] but, rather, in obtaining a determination that it had no duty to defend or to indemnify [the tortfeasor] because his conduct was not covered by [the policy pursuant to which indemnification was sought]. In such circumstances, we cannot conclude that [the insurer] and [the tortfeasor] were in privity: [the insurer's] interest, in contrast to [the tortfeasor's] interest, was to demonstrate that [the tortfeasor's] conduct was intentional and, therefore, outside the scope of the policy." Id., 691–92 n.16; see also 2 Restatement (Second), Judgments § 57 (2)-(3), comment (c) (1982) (if indemnitor, indemnitee have conflicting interests relating to injured person's claim against indemnitee, judgment for injured person does not preclude indemnitor as to issues to which conflict pertains);[18] cf. *Mazziotti* v. *Allstate Ins. Co.*, supra, 240

[18] As evidenced by the Restatement comment cited, the circumstances of this case are hardly unique. A conflict of interest between an indemnitor and an indemnitee "occurs when the injured party's claim may be upheld on different grounds, one of which is within the terms of the indemnity obligation and the other of which is not." 2 Restatement (Second), supra, § 57 comment (c). "In such circumstances, it is to the interest of the indemnitee that, if liability be established against him, it be established on a ground within the indemnity obligation so that he can shift the loss to the indemnitor. It is to the interest of the indemnitor that, if liability be established against the indemnitee, it be on a ground outside the indemnity obligation. Neither of them could defend the action in a way that would fairly protect the interests of the other in all respects. Because of the conflict, the indemnitor

Conn. 817 (plaintiff's underinsured motorists insurance carrier not in privity with defendant tortfeasor because "[t]he insurer is not the alter ego of the tortfeasor and, although its contractual liability is premised in part on the contingency of the tortfeasor's liability, they do not share the same legal right").

Here, likewise, the plaintiff's primary interest in this action was not in establishing that the defendants were not liable to the intervenor and her son for Morris' acts of sexual abuse, but rather, in obtaining a determination that it had no duty to defend or to indemnify the defendants because the conduct at issue was not covered by the policy. Given our Supreme Court's holding under like circumstances in *DaCruz*, we are constrained to conclude that the plaintiff and the defendants are not in privity, and the doctrine of collateral estoppel, thus, is inapplicable.

Regarding the intervenor's claim that the plaintiff was notified of the underlying action and had the opportunity to participate therein, we note that an unexercised right to participate does not result in preclusion. See *Young* v. *Metropolitan Property & Casualty Ins. Co.*, 60 Conn. App. 107, 115, 758 A.2d 452 (defendant not precluded from contesting arbitration findings by declining invitation to participate in arbitration when not contractually obligated to do so), cert. denied, 255 Conn. 906, 762 A.2d 912 (2000); see also 47 Am. Jur. 2d, Judgments § 659 (1995) ("right to intervene in an action does not, in the absence of its exercise, subject

cannot properly be called on to take control of the defense of the action, for he would be required either to sacrifice his own interests without a fair opportunity to litigate questions concerning his liability or to commit a breach of his duty to conduct a vigorous defense of the indemnitee. Accordingly, when the claim against the indemnitee is one as to which he and the indemnitor have a conflict of interest, the indemnitor is not estopped in a subsequent action on the indemnity obligation to dispute the existence or extent of the indemnitee's liability to the injured person." Id.

one possessing it to the risk of being bound by the result of the litigation"). On the basis of the foregoing analysis, we conclude that Judge Gormley did not act improperly when he declined to give preclusive effect to the findings implicit in the default judgment in the underlying action.

### III

The intervenor next claims that Judge Gormley improperly rendered partial summary judgment in favor of the plaintiff because there were genuine issues of material fact. We disagree.

Particularly, the intervenor argues, without elaboration, that "there is an outstanding issue of fact regarding the relationship between Morris and Pediatric . . . ." Furthermore, she claims that the policy is ambiguous such that its meaning is an issue of fact for a jury to decide.

"Practice Book § 17-49 provides in relevant part that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary . . . ." (Citations omitted; internal quotation marks omitted.) *McCue* v. *Birmingham*, 88 Conn. App. 630, 634–35, 870 A.2d 1126, cert. denied, 274 Conn. 905, 876 A.2d 14 (2005).

"[A]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely

to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 252–53, 819 A.2d 773 (2003).

Here, the intervenor presumably is arguing that there is a viable factual question as to whether Morris was an employee of Pediatric rather than an owner-director thereof, but she cites no evidence in support of that claim. In ruling on the motions for summary judgment, the court had before it the application for insurance in which Morris identified himself as "executive director" of Pediatric, as well as the articles of organization for Pediatric in which Morris was identified as both organizer and statutory agent. The intervenor did not present any evidence tending to show instead that Morris was an employee of Pediatric.[19] Accordingly, we conclude that the intervenor has made only a mere assertion of fact insufficient to defeat summary judgment.

Regarding the claimed ambiguity in the policy, the intervenor directs us to the portion therein that provides child molestation liability coverage for acts perpetrated by employees, and also to an endorsement to the policy, which she claims provides to the contrary and thus creates an ambiguity. The endorsement is captioned "Child Molestation Exclusion" and provides, in relevant part, that "[t]his policy does not apply to any injury sustained by any person arising out of or resulting from the molesting or abuse of minors by . . . any employee of any Insured . . . ." According to the intervenor, the conflict between these two parts of the policy creates

---

[19] In fact, in the underlying action, the intervenor's complaint alleged that Morris is Pediatric's owner and director, not its employee.

an ambiguity as to child molestation liability coverage that only a jury can resolve.

Although "[i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy"; (internal quotation marks omitted) *Nationwide Mutual Ins. Co.* v. *Allen*, 83 Conn. App. 526, 537, 850 A.2d 1047, cert. denied, 271 Conn. 907, 859 A.2d 562 (2004); and, thus, ordinarily presents a question of fact, when "the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law." (Internal quotation marks omitted.) Id. "[A] contract is unambiguous when its language is clear and conveys a definite and precise intent." (Internal quotation marks omitted.) Id., 538. The mere fact that a party contends otherwise does not mandate a conclusion that ambiguity exists. Id.

We conclude that the court properly held, as a matter of law, that the endorsement at issue did not create an ambiguity. The endorsement clearly indicates that it modifies the coverage afforded by the policy in the general liability and professional liability portions. The obvious implication is that the separate portion providing for child molestation liability coverage is unaffected. Nevertheless, even if the endorsement did pertain to the child molestation liability coverage portion of the policy as well, the fact that its terms were contrary to that portion would not make the policy ambiguous. This is because it is in the very nature of an endorsement that it alters and takes precedence over the provisions of the policy to which it pertains. See *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 703–705, 569 A.2d 1131 (1990). "If, any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control." (Internal quotation marks omitted.) Id., 705, quoting 13A J. Appleman,

Insurance Law and Practice § 7537; see also 43 Am. Jur. 2d 353, Insurance § 304 (2003). Finally, even if there were a factual question as to whether the policy afforded coverage for child molestation perpetrated by employees, it still would not create a material issue precluding summary judgment because, as explained previously, there was no evidence that Morris was an employee of Pediatric rather than an owner and director.

In sum, the intervenor has failed to show that there are genuine issues of material fact. Consequently, the court's rendering of partial summary judgment was proper.

## IV

The intervenor's last claim is that Judge Gormley improperly applied the holding of *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 268 Conn. 675, because the facts of that case are distinguishable from those of the present matter. This claim lacks merit.

The intervenor argues specifically that Judge Gormley "misunderstood the Supreme Court's ruling in [*DaCruz*] in two significant ways. First and controlling, the Supreme Court correctly identified that [the] insured was trying to extend coverage to a child who was a mere visitor to the home of the insured at the time of the occurrence. It was the visiting child who attacked another child in the school yard and inflicted serious physical damage to that victim. The tortfeasor child was merely visiting in the home of the defendant homeowner, who, in turn had the contract with the defendant insurance company. The fact is that neither the child tortfeasor, nor his father, was a named insured to the policy. This issue was indeed controlling as a matter of law and subject to a motion for summary judgment. Second, the Supreme Court recognized the conflict in the trial court's ruling that characterized the

conduct of the tortfeasor as being both intentional and negligent at one and the same time. This is a clear conflict which could not be used for the effect of collateral estoppel."

After a careful reading of the Supreme Court's decision in *DaCruz*, we conclude that the intervenor's recitation of the facts is inaccurate and that her description of the court's holding borders on fictional. In *DaCruz*, the tortfeasor was a high school student who had assaulted a classmate. *DaCruz* v. *State Farm Fire & Casualty Co.*, supra, 268 Conn. 678. At the time of the assault, he and his father were residing with a woman whom the father married some five months later. Id., 679. The woman was insured under a homeowner's insurance policy that provided coverage for certain claims against her "or 'any . . . person under the age of [twenty-one]' in [her] care . . . ." Id., 680. As noted by the court, "[t]here does not appear to be any dispute that [the tortfeasor] was an insured under [the woman's] homeowner's insurance policy because he was a person under the age of twenty-one who was living in her household at the time of the assault." Id., 680 n.7.

Insofar as no party argued on appeal that coverage was unavailable to the tortfeasor on the basis of his relationship to the policyholder, and because the policy apparently did not disallow coverage for that reason, it is not surprising that the Supreme Court in fact did not find that issue "controlling as a matter of law." Rather, the court clearly agreed that the conduct of the tortfeasor could only be characterized as intentional and, thus, outside the terms of the policy coverage and, because the insurer and the tortfeasor were not in privity; see part II; the trial court in the action against the insurer was justified in revisiting the finding of negligence in the prior action against the tortfeasor. Id., 690–92.

It is true that the court, as additional support for its holding, noted that the default judgment in the prior action embodied incongruent findings that the same behavior was both negligent and intentional and, therefore, that the judgment was without legal force and properly disregarded. Id., 693. The present case, however, is hardly distinguishable in this regard. Because counts four and five of the intervenor's complaint in the underlying action allege, respectively, that the same actions were both intentional and negligent, Judge Pittman's judgment finding the allegations proven suffers from the same infirmity as the judgment in *DaCruz*. Accordingly, the intervenor's final claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.