ROBERT D. HARTMANN ET AL. *v.* GULF VIEW
ESTATES HOMEOWNERS ASSOCIATION,
INC., ET AL.
(AC 24712)

Foti, Flynn and Bishop, Js.

Argued November 30, 2004—officially released March 29, 2005

*Nathalie Feola-Guerrieri*, with whom, on the brief, was *Daniel Shepro*, for the appellants (plaintiffs).

*Stephen G. Murphy, Jr.*, for the appellees (defendant Joseph Blichfeldt et al.).

*Opinion*

BISHOP, J. In this appeal, the plaintiffs, Robert D. Hartmann and Carol D. Hartmann, claim that the trial court incorrectly rendered summary judgment in favor of the defendant Joseph Bichfeldt and the substitute defendants[1] on the second count of the complaint alleging intentional infliction of emotional distress. We disagree and affirm the judgment of the trial court.

---

[1] The original defendants were Gulf View Estates Homeowners Association, Inc., Richard Markus, Joseph Blichfeldt and Evelyn Ogden. The plaintiffs withdrew their claim against Gulf View Estates Homeowners Association, Inc. During the pendency of this case, Richard Markus and Ogden died. Arlene Markus, as the administratrix of the estate of Richard Markus, and Conrad L. Ambrette, as the administrator of the estate of Evelyn Ogden, were substituted as defendants.

The following procedural facts are pertinent to our discussion of the issue on appeal. The plaintiffs originally filed a two count complaint alleging, inter alia, that they had purchased a lot in a Milford subdivision known as Gulf View Estates subject to a declaration of the Gulf View Estates Homeowners Association, Inc. (association). The declaration requires lot purchasers to submit plans for the construction of their residences to the association and gives the association authority to accept or reject the plans and building specifications for numerous reasons, including aesthetics. The plaintiffs further alleged that they submitted plans for the construction of a residence to the association and that the association rejected the plaintiffs' initial and subsequent proposals for the exterior color scheme of their intended residence. The plaintiffs asserted that the association abused its discretion in refusing to accept their proposal and that the association's refusal was prompted by the fact that the plaintiffs had placed a sign on their lot identifying their building contractor. In the first count of their complaint, the plaintiffs sought an order enjoining the association from unreasonably withholding or delaying approval of the plaintiffs' choice of color for the exterior of their residence. Count two consisted of a claim that certain behaviors of the defendants Richard Markus, Joseph Blichfeldt and Evelyn Ogden, who were members of the association's board, constituted intentional infliction of emotional distress. In addition to its incorporation of all the allegations of the first count, count two contains allegations that Blichfeldt, who resides in the subdivision and whose company was the developer of the subdivision, harassed individuals retained by the plaintiffs to construct their house, made false claims about the plaintiffs' contractor and falsely claimed that the plaintiffs were violating the declaration and rules of the association. Additionally, the plaintiffs claimed in this count

that the defendant board members had the association impose a $50 per day fine on the plaintiffs for maintaining a sign on their property identifying the name and address of their contractor even though the defendant board members knew or should have known that the sign did not violate any association rule. Finally, the plaintiffs claimed that "[t]he imposition of such fine and the failure to reasonably and timely approve one of the colors submitted, upon information and belief, was intended by the . . . [board members] to further the harassment and vendetta that Blichfeldt conducted earlier, and such conduct had the intended consequence of causing the plaintiffs great emotional stress."

Subsequent to the filing of the complaint, the parties entered into a stipulation regarding the plaintiffs' request for an injunction, resulting in the withdrawal of the first count against the association while leaving in place the second count against the individual defendant board members for monetary damages based on their alleged intentional infliction of emotional distress. In response to the second count, the original individual defendants filed a motion for summary judgment based on their claim that the allegations did not, as a matter of law, rise to the level of extreme and outrageous conduct as required in a claim for the intentional infliction of emotional distress. This appeal followed the court's granting of the defendant board members' motion for summary judgment.

We begin our analysis of the plaintiffs' claim by setting forth our standard of review of a court's decision on a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Morris* v. *Congdon*, 85 Conn. App. 555, 558, 858 A.2d 279 (2004); see also Prac-

tice Book § 17-49. "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Morris* v. *Congdon,* supra, 558–59.

At the heart of the argument raised in the summary judgment motion was the assertion that the allegations contained in the second court, even if proven, do not constitute extreme or outrageous behavior. We agree. " 'Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!' . . . *Carrol* v. *Allstate Ins. Co.,* 262 Conn. 433, 443, 815 A.2d 119 (2003)." *Morrissey* v. *Yale University,* 268 Conn. 426, 428, 844 A.2d 853 (2004). "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). Liability for intentional infliction of emotional distress requires conduct that exceeds "all bounds usually tolerated by decent society." (Internal quotation marks omitted.) Id., 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60.

Although the plaintiffs agree with these general principles of law, they claim that the court engaged in fact-finding in deciding that the behaviors alleged in the second count did not rise to a level of severity adequate to state a claim for intentional infliction of emotional distress. Here, the plaintiffs misconstrue the court's function in such cases. Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. *Bell* v. *Board of Education*, 55 Conn. App. 400, 409–10, 739 A.2d 321 (1999). Only where reasonable minds disagree does it become an issue for the jury. Id., 410. Therefore, in assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not fact-finding, but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress. Cf. *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).

In their complaint and in the affidavit filed by Robert Hartmann in opposition to the motion for summary judgment, the plaintiffs identify the original individual defendants' intentional behavior as rejecting their choice of an exterior paint color without any reasonable basis, retaliating against the plaintiffs for having called a special meeting of the board of the association in order to remove the original individual defendants as board members, and selectively and vindictively imposing fines on them in retaliation for placing a sign on their lot identifying their contractor. While it is understandable that such behaviors, if they occurred, could

be the occasion of distress to the plaintiffs, we agree with the court's assessment that they do not rise to the level of extreme or outrageous behavior required to state a cause of action for intentional infliction of emotional distress.

The judgment is affirmed.

In this opinion the other judges concurred.