# MARGARET GAGNON *v.* HOUSATONIC VALLEY TOURISM DISTRICT COMMISSION ET AL.
## (AC 26275)

Dranginis, Flynn and Bishop, Js.

Submitted on briefs October 24, 2005—officially released January 3, 2006

*Joseph M. Brophy* filed a brief for the appellant (plaintiff).

*Mark L. Zaken* filed a brief for the appellees (defendant Laszlo L. Pinter et al.).

*Opinion*

FLYNN, J. In this action for wrongful discharge, withholding of wages, intentional infliction of emotional distress, libel and slander, the plaintiff, Margaret Gagnon, appeals from the judgment of the trial court rendered following the granting of the motions for summary judgment made by the defendants Housatonic Valley Tourism District Commission (commission), commission chairperson Laszlo L. Pinter, and commission members Violet Mattone and Carl A. Landwehr.[1] Specifically, the plaintiff claims that the court improperly rendered summary judgment as to the counts of her complaint alleging (1) wrongful discharge, (2) wrongful withholding of wages, (3) intentional infliction of emo-

---

[1] Pinter and Mattone were the only defendants to file briefs in this appeal. The statute that created the commission was repealed effective August 30, 2003; see General Statutes § 32-302 (a) (10); and Landwehr is now deceased.

tional distress and (4) libel and slander.[2] We affirm the judgment of the trial court.

The following facts and procedural history, as set forth by the trial court are relevant to our resolution of this appeal. "The commission employs an executive director to assist with the formulation of policies and programs, direct staff and implement general policies established by the commission. In 1984, the plaintiff was interviewed for the position of executive director. She was provided a written job description which did not contain any language on the terms or duration of the proposed employment. During the interviews, the issue of termination was not discussed, the term of employment was not set and no written employment policies or procedures were provided to the plaintiff. No oral or written promise was provided to the plaintiff altering the at-will status of the position. Following the interviews, the chairman offered the plaintiff the position of executive director with a starting salary of $25,000, benefits, paid holidays and vacation benefits. The plaintiff accepted this offer, but was never given, nor did she sign, a written contract.

"The plaintiff began her employment on June 1, 1984. During the term of her employment, the plaintiff received raises set by the chairman of the commission and the executive committee. No written policies were created or published by the commission governing or altering the terms of the plaintiff's employment.

"During her employment term, the plaintiff drafted a handbook of policies for an administrative assistant and a fluctuating number of part-time or temporary

---

[2] The plaintiff's second amended complaint had forty counts. The plaintiff withdrew counts eight, eleven, and sixteen through forty. The court granted the defendants' motions for summary judgment as to counts one through seven, nine, ten and twelve through fifteen. The plaintiff appeals from the court's judgment with respect to counts one through three, six, seven, nine, ten and twelve through fifteen.

secretaries under her management. She did not submit this manual to the commission for approval, and the commission did not approve or adopt its contents.

"In September 1995, Joseph Riberio, after being elected treasurer of the commission, undertook a review of the financial records of the commission. He thereafter produced a 'treasurer's report,' dated December 1, 1995, which listed twenty-nine concerns relating to the finances and bookkeeping procedures of the commission. Pinter, the chairman of the commission, although indicating that these points were not necessarily accurate or reflective of the operations of the commission, arranged for a special meeting to discuss the concerns raised in the report. He requested that the plaintiff wait until the meeting to discuss the matter with the commission and that she not 'try this in the press' prior to the meeting. He assured her that she would have an opportunity to respond to each of the treasurer's concerns at the upcoming meeting.

"At the December 15, 1995 meeting of the commission, Riberio discussed his concerns, the plaintiff responded to each concern, and the commissioners asked the plaintiff and Riberio questions and stated their individual feelings and positions. At Mattone's suggestion, the commission considered requesting its auditors to do a forensic audit of the commission. The commission voted and passed a resolution concluding that there was no material impropriety concerning twelve of the treasurer's concerns, ten of the concerns merely required streamlining the commission's bookkeeping procedures, and seven of the concerns would be tabled for future discussion.

"On January 26, 1996, the commission hired an independent firm to conduct the forensic audit. On May 30, 1996, the auditor's report was released. It suggested several improvements to the commission's financial and

bookkeeping procedures but did not find specific fault with the plaintiff's practices. Though no improprieties were revealed through the audit, several commissioners were concerned about the plaintiff's behavior during meetings following the receipt of the twenty-nine concerns raised by Riberio. The plaintiff and Riberio had frequent disagreements, which led to a June 14, 1996 meeting to discuss the personal issues between the plaintiff and the commissioners. The commission met with the plaintiff and concluded that the plaintiff's contentiousness and resistance to cooperate with the commission impeded its goals and mission. The plaintiff was offered six months of severance pay and benefits if she resigned. The commission informed the plaintiff that if she refused the benefits package, her employment would be terminated. The plaintiff, after a brief consideration, advised the commission that it left her no choice, departed the meeting and never returned to work. After the plaintiff left the meeting, the commission unanimously voted to accept her resignation.

"After the meeting of June 14, 1996, the commission delivered an agreement to the plaintiff confirming her resignation and providing a severance package. The plaintiff did not sign this document. The plaintiff was paid for all time worked through June 14, 1996.

"On June 17, 1996, the plaintiff wrote to the commission purporting to retract her resignation. The commission's attorney responded to the plaintiff by letter that it would not accept the retraction and would not grant the plaintiff a leave of absence.

"Although the plaintiff had refused to sign the acknowledgment of her resignation and accept the commission's offer of a severance package, the commission continued to provide her medical benefits for six months after her resignation. The plaintiff also received $300 per week under the commission's disability policy

for two years following her resignation. The plaintiff made no attempt to return to work at the commission after her resignation on June 14, 1996.

"On December 12, 2000, the commission, Pinter and Mattone filed a motion for summary judgment on counts one through seven, count nine, and counts twelve through fourteen on the ground that no genuine issues of material fact exist[ed] and thus they [were] entitled to judgment as a matter of law. On December 20, 2000, Landwehr filed a renewed motion for summary judgment as to counts ten and fifteen. On January 31, 2001, the plaintiff filed a memorandum of law in opposition to the defendants' motions for summary judgment. Thereafter, the defendants filed reply briefs to the plaintiff's opposition memorandum."

On August 9, 2001, the court granted the defendants' motions for summary judgment. This appeal followed.

At the outset, we note the standard of review of the court's granting of a motion for summary judgment. "Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute

evidence properly presented to the court [in support of a motion for summary judgment]." (Citation omitted; internal quotation marks omitted.) *Home Ins. Co.* v. *Aetna Life & Casualty Co.*, 235 Conn. 185, 202, 663 A.2d 1001 (1995); see also Practice Book § 17-49. "Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003). "To oppose a motion for summary judgment successfully, the non-movant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Reynolds* v. *Chrysler First Commercial Corp.*, 40 Conn. App. 725, 729, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996).

I

The plaintiff first claims that the court improperly rendered summary judgment in favor of the defendant commissioners with respect to her claim for wrongful discharge. Specifically, the plaintiff argues that a material issue of fact remained as to whether an implied contract existed and, alternatively, if the plaintiff was an at-will employee, then a question remained as to whether the termination of her employment violated an important public policy. We disagree.

A

The plaintiff argues that there are material issues of fact as to whether an implied contractual agreement existed that would prohibit the termination of her employment except for cause. We disagree.

In order to prevail on her claim, the plaintiff must demonstrate an actual agreement by the defendants to have an employment contract with her. A contract implied in fact, like an express contract, depends on

actual agreement. Accordingly, to prevail on a wrongful termination claim, which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that the defendants had agreed, either by words or action or conduct, to undertake some form of actual contract commitment to her under which she could not be terminated without just cause. To survive a motion for summary judgment, the plaintiff had the burden of presenting evidence that the defendants had agreed to some form of contract commitment. See id., 729–30.

In this case, the plaintiff did not present any evidence that would permit a trier of fact to draw a reasonable inference that an implied employment contract existed between her and the defendants. In her deposition, the plaintiff testified that it was *her understanding* that if she did her job well and the funding for the commission continued, she would have a job. However, she could not recall anything that was said specifically by the members of the commission's board of directors regarding an implied contract of employment and could not recall being given or shown any policies or procedures regarding her employment at the time she accepted the position. We note that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . . The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. . . . [E]ven with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." (Citations omitted; internal quotation marks omitted.) Id., 731–32.

The plaintiff did not present any evidence that the policy handbook created any type of agreement

between her and the commission. In her deposition, the plaintiff stated that she could not recall whether she created the handbook on her own or whether she created it at the direction of the commission, and she could not recall whether the handbook was distributed to or discussed by the commission's board of directors.

The plaintiff claims that such things as periodic reviews, setting dates at which there would be salary increases, setting long-term benefits and the way other employees were treated are evidence of an implied contract between her and the commission that she would not be discharged except for cause. The plaintiff fails to recognize, however, that it is her burden to establish that adherence to these policies and procedures was the result of a contractual commitment by the defendant. "[C]ontracts are not created by evidence of customs and usage." *Christensen* v. *Bic Corp.*, 18 Conn. App. 451, 456, 558 A.2d 273 (1989).

The plaintiff also claims that there is a question of fact as to whether her employment was in fact terminated or whether she simply resigned. On June 14, 1996, the plaintiff submitted a letter of resignation, which she did not sign. Three days later, on June 17, 1996, the plaintiff submitted a letter to Pinter stating that she had decided not to submit her resignation. This is not a material fact. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 578, 573 A.2d 699 (1990). Regardless of whether the plaintiff was an at-will employee or whether she resigned or her employment was terminated, the plaintiff did not present evidence of a material fact that an implied contractual agreement existed that would prohibit the termination of her employment except for cause.

B

Alternatively, the plaintiff argues that in the absence of an implied contract, there is a material issue of fact as to whether the termination of her employment violated an important public policy. We disagree.

Our Supreme Court has recognized an exception to the general rule regarding at-will employment in which an at-will employee may have a cause of action when the employee alleges "a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 475, 427 A.2d 385 (1980).

The public policy exception to the at-will employment doctrine, however, is "to be construed narrowly." Fenner v. Hartford Courant Co., 77 Conn. App. 185, 194, 822 A.2d 982 (2003). Under that narrow exception, "the employee has the burden of pleading and proving that his dismissal occurred for a reason violating public policy." Morris v. Hartford Courant Co., 200 Conn. 676, 679, 513 A.2d 66 (1986). In evaluating such claims, our Supreme Court has looked "to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Internal quotation marks omitted.) Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 699, 802 A.2d 731 (2002). "A cognizable claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy." Carnemolla v. Walsh, 75 Conn. App. 319, 323 n.5, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003).

The plaintiff has failed to present the necessary factual predicate to raise a genuine issue of fact under the

*Sheets* exception, namely, as to whether her dismissal violated public policy. The plaintiff has not established any issue of material fact concerning her allegation that the commission withheld wages. The plaintiff claims that she had not been paid for her unused, accrued vacation time but has failed to provide evidence that she was entitled to such pay. She testified in her deposition that the commission always had paid employees for their accrued vacation time and that it was written in the manual. The plaintiff has not provided evidence that adherence to these policies and procedures was the result of a contractual commitment by the commission to pay her for unused, accrued vacation time. As we stated previously, "[c]ontracts are not created by evidence of customs and usage." *Christensen* v. *Bic Corp.*, supra, 18 Conn. App. 456. Additionally, as stated previously, the plaintiff has not provided evidence that the handbook created an agreement between her and the commission.

The plaintiff also claims that she was not permitted to defend herself against the twenty-nine concerns of Riberio, specifically, that she was told not to talk to the press, in violation of General Statutes § 31-51q.[3] The plaintiff, however, has not provided any evidence that her employment was terminated on account of the exercise of rights guaranteed by the first amendment to the

---

[3] General Statutes § 31-51q provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

United States constitution or article first, § 3, 4 or 14, of the constitution of Connecticut, in violation of § 31-51q.

Therefore, the plaintiff has not supplied the factual predicate necessary to support her contention that she was discharged for a demonstrably improper reason.

II

The plaintiff next claims that the court improperly rendered summary judgment in favor of the commission, Pinter, Mattone and Landwehr with respect to her claim for intentional infliction of emotional distress.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." (Internal quotation marks omitted.) *Benton* v. *Simpson*, 78 Conn. App. 746, 753, 829 A.2d 68 (2003).

The plaintiff claims that the court ignored certain facts and engaged in fact finding when it concluded that the defendants' conduct did not rise to the extreme and outrageous level required for an action for intentional infliction of emotional distress. The plaintiff mis-

construes the court's function in such cases. "[I]n assessing a claim for intentional infliction of emotional distress, the court performs a gatekeeping function. In this capacity, the role of the court is to determine whether the allegations of a complaint, counterclaim or cross complaint set forth behaviors that a reasonable fact finder could find to be extreme or outrageous. In exercising this responsibility, the court is not fact finding, but rather it is making an assessment whether, as a matter of law, the alleged behavior fits the criteria required to establish a claim premised on intentional infliction of emotional distress." *Hartmann* v. *Gulf View Estates Homeowners Assn., Inc.*, 88 Conn. App. 290, 295, 869 A.2d 275 (2005).

The plaintiff claims that an investigation was made prior to her dismissal concerning the twenty-nine points raised by Ribeiro and that the investigation caused her emotional distress because the accusations contained in the twenty-nine points were incorrect and because she was not permitted to address those claims at the special meeting on December 15, 1995. The court properly found that these actions did not rise to the level of outrageousness necessary for a claim based on intentional infliction of emotional distress. Additionally, as the court noted, the plaintiff admitted in her deposition that she had been given an opportunity to address the twenty-nine points.

### III

The plaintiff next claims that the court improperly rendered summary judgment in favor of the commission, Pinter, Mattone and Landwehr with respect to her claims for libel and slander.

"A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him

. . . . To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." (Citations omitted; internal quotation marks omitted.) *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759 (2004).

"Defamation is comprised of the torts of libel and slander. . . . Slander is oral defamation. . . . Libel . . . is written defamation. . . . Libel per se . . . is a libel the defamatory meaning of which is apparent on the face of the statement and is actionable without proof of actual damages. . . . When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. [The plaintiff] is required neither to plead nor to prove it. . . . Whether a publication is libelous per se is a question for the court." (Internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 850, 863 A.2d 735 (2005).

In her second amended complaint, the plaintiff alleged that Riberio had made false statements to the media and to individuals that, inter alia, she had misappropriated funds and engaged in criminal activity and that he had caused such false statements to be published in the press. The plaintiff claims that the commission, Pinter, Mattone and Landwehr adopted Riberio's accusations by causing the twenty-nine points to be published in the minutes of the December 15, 1995 meeting, adopting his accusations and calling for a second audit on the basis of Riberio's accusations. According to the minutes of that meeting, which the defendants submitted in support of their motion for summary judgment, all of the defendants, except for Riberio who voted against, with Lehrwehr abstaining,

voted to investigate further only seven of the twenty-nine points. The defendants also submitted portions of the plaintiff's deposition, in which she testified that at a meeting held on January 26, 1996, the board discussed the seven issues and decided to hire an outside firm to conduct a forensic audit and that she believed that the audit vindicated her. The plaintiff does not point to any facts that could suggest that the commission, Pinter, Mattone or Landwehr adopted the statements made by Riberio at the December 15, 1995 meeting. Summary judgment was properly rendered in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.