******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSE REYES ET AL. *v.* CITY OF BRIDGEPORT ET AL.
(AC 35422)

Beach, Bear and Sheldon, Js.*

*Argued February 6—officially released September 2, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Tyma, J.)

*W. Martyn Philpot, Jr.*, for the appellants (plaintiffs).

*John R. Mitola*, associate city attorney, for the appel-
lees (named defendant et al.).

*Opinion*

BEACH, J. The plaintiffs, Jose Reyes, James Kirkland, Steven Lougal, Mark Straubel, Donald Jacques, Christine Burns, William Mayer, Vincent Ingrassia, Melody Pribesh, and Kevin Gilleran, appeal from the judgment of the trial court granting the motion for summary judgment of the defendant city of Bridgeport (city), its Board of Police Commissioners (board), and Ralph H. Jacobs, the city's former civil service personnel director.[1] We affirm the judgment of the trial court.

In October, 2007, the plaintiffs initiated the present action, which concerns a promotional examination given by the city for the position of lieutenant in the city's police department. The operative complaint alleged denial of due process and equal protection pursuant to 42 U.S.C. § 1983, breach of contract pursuant to a collective bargaining agreement, and intentional infliction of emotional distress.

The following facts were alleged in the complaint. The plaintiffs worked for the city's police department and had attained the rank of sergeant. The defendants permitted at least five unqualified candidates to sit for a November 1, 2007 promotional examination for the rank of lieutenant. Those candidates did not have the requisite "time in grade" as sergeants from the date of the last vacancy, which arose on August 17, 2004, to qualify them to compete for the rank of lieutenant. The plaintiffs, who did have sufficient "time in grade," claimed that § 211 of the civil service provisions of the Charter of the City of Bridgeport (city charter) required the city to hold promotional examinations within 120 days of the creation of a vacancy; but, in violation of § 211, the lieutenant examination was held almost two years after the creation of the vacancy. They claimed that in violation of their right to equal protection, they were forced to compete for the vacant lieutenant position with five sergeants who should have been ineligible to take the examination, two of whom were African-American. One such candidate, Lonnie Blackwell, tested number one on the examination and allegedly was given preferential treatment because of his race. The gravamen of their complaint was that Caucasians were unfairly treated because those of other racial backgrounds were unfairly favored by the defendants' manipulation of the eligibility requirements for taking the examination.[2]

The defendants filed a motion for summary judgment as to the entire complaint. The court granted the motion in its entirety. This appeal followed.

"The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *LaFlamme* v. *Dallessio*, 261 Conn. 247, 250, 802 A.2d 63 (2002).

Section 211 of the city charter concerns eligibility for promotional examinations. Subsection (a) of § 211 provides in relevant part that to be eligible to take a promotional examination, a candidate must hold "a position for a year or more in a class or rank previously declared by the [civil service] commission to involve the performance of duties which tend to fit the incumbent for the performance of duty in the class or rank for which the promotion test is held. . . . A person who has served less than one year in a lower grade shall not be eligible for a promotion test." Bridgeport Charter, c. 17, § 211 (a). Section 211 (b) of the city charter provides in relevant part that "[w]hen a position in a promotion class shall become vacant . . . the personnel director shall, within one hundred and twenty days of the date of the creation of the vacancy, hold a promotion test for such class."

Prior unrelated disputes between the city and the Bridgeport Police Union, AFSCME, Local 1159 (union), regarding inequities caused by holding promotional examinations late had been resolved by a settlement agreement. The union had claimed that § 211 (b) of the city charter required the personnel director to administer promotional examinations within 120 days of the creation of a vacancy, and the union had filed numerous grievances under the collective bargaining agreement alleging that promotional examinations were not timely administered under the city charter. The city and the union agreed that "[i]f a promotional examination is not administered as required by Section 211 (b) of the City Charter, the Union and City agree that as to those members who eventually take the examination and are promoted . . . [t]he first said member's rank seniority shall relate back to the one hundred and twentieth (120th) day after the first vacancy." The protocol in effect at the time of the examination in question, then, in the circumstance of examinations for the position of lieutenant, was that a sergeant must have held the rank of sergeant for one year, and the "time in rank" began 120 days after the vacancy that he or she filled was created.[3]

I

The plaintiffs claim that the court erred in granting

the defendants' motion for summary judgment as to the counts of their complaint alleging that the defendants deprived them of equal protection in violation of 42 U.S.C. § 1983.[4] We disagree.

In order to set forth a prima facie case of discrimination in violation of the federal equal protection clause, a plaintiff must establish under the pretext theory[5] that he: "(1) is a member of a protected class; (2) applied for and was qualified for the benefit or position; (3) suffered an adverse action by the defendant; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 227, 939 A.2d 541 (2008), citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). "Under [the burden shifting] analysis [of *McDonnell Douglas Corp.*], the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision actually was motivated by illegal discriminatory bias." (Internal quotation marks omitted.) *Vollemans* v. *Wallingford*, 103 Conn. App. 188, 220, 928 A.2d 586 (2007), aff'd, 289 Conn. 57, 956 A.2d 579 (2008).

The trial court noted that the defendants agreed, for purposes of the motion for summary judgment, that genuine issues of material fact existed as to whether the plaintiffs were members of a protected class and whether they suffered an adverse employment action. The defendants claimed only that there was an absence of a genuine issue of material fact as to whether the adverse employment action took place under circumstances permitting an inference of discrimination. The defendants did not claim for the purpose of this argument that the plaintiffs had failed to establish a prima facie case on the issue of discrimination.

The plaintiffs produced evidence that the vacancy for the lieutenant position arose on August 17, 2004, when Lieutenant Nancy Lackups retired.[6] It was undisputed that § 211 (b) of the city charter required promotional examinations to be given no more than 120 days after the vacancy of the position. The subject promotional examination was given on November 1, 2007. It was also undisputed that the city permitted two candidates, including Blackwell, who were not in the claimed protected class to take the examination. The plaintiffs argued that pursuant to § 211 (a), these two candidates were not eligible for the position of lieutenant.

The issues of fact urged by the plaintiffs in their appellate brief, specifically Jacobs' intent and motivation[7] in creating the list of candidates eligible to take the November 1, 2007 promotional examination and the

question of whether the retirement of Lackups created a vacancy, are material and genuine as to the issue of whether a prima facie case exists for purposes of summary judgment. "The most typical method used by plaintiffs to establish the fourth prong of a prima facie case is to introduce evidence that the defendant later considered, hired . . . or promoted comparably qualified individuals not in a protected class of individuals. See *Zimmermann* v. *Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (plaintiff's replacement by someone outside protected class satisfied fourth element of prima facie case); *Schnabel* v. *Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (replacement of sixty plus year old plaintiff by thirty-one year old permitted inference of age discrimination); *Carlton* v. *Mystic Transportation, Inc.*, 202 F.3d 129, 135–36 (2d Cir. 2000) (plaintiff's replacement by two employees eighteen and twenty-five years younger permitted inference of age discrimination); *Norville* v. *Staten Island University Hospital*, 196 F.3d 89, 96 (2d Cir. 1999) (plaintiff's age discrimination claim based on employer's decision to fill position with younger candidate)." (Footnote omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 639, 791 A.2d 518 (2002). Jacobs' actions were analogous to those in the cited federal cases because he selected individuals whom he deemed eligible to take the promotional examination, and an individual who was promoted was not a member of the allegedly protected class.

There are no genuine issues of material fact regarding the second step of the *McDonnell Douglas Corp.* analysis. The defendants produced evidence of a legitimate, nondiscriminatory justification for Jacobs' employment decisions. Jacobs, in an effort to abide by the city charter by not exceeding the authorized allotment of lieutenants, selected Brenner's retirement date to be the date the vacancy was created.[8] The defendants also produced evidence that Jacobs was trying to comply with the city charter provisions regarding "rank seniority" and the collective bargaining agreement. It is clear, then, that the defendants presented a nondiscriminatory rationale for the purpose of the second step of the *McDonnell Douglas Corp.* analysis.

The defendants presented evidence that Jacobs used as bases for the qualification of candidates the city charter, an October 1, 2001 settlement agreement between the city and the union (settlement agreement), and his discussions with the city's attorney's office. In his affidavit, Jacobs stated the following. He believed that the language of the *settlement agreement* established the eligibility of employees to take a promotional examination in some circumstances, even though they did not technically hold the lower rank position for one year or more.[9] After receiving inquiries regarding the preliminary list of candidates who Jacobs thought were qualified to take the November 1, 2007 promotional

examination, he consulted the city's attorney's office. He was informed that he should credit the "rank seniority" afforded by the settlement agreement in determining the total length of service of an employee as a permanent appointee in a rank.

After the issue was clarified, Jacobs conducted an investigation to determine who was eligible to participate in the promotional examination by looking, in part, at the date of the creation of a vacancy in a lieutenant position. He first determined that the date that created the vacancy was Lieutenant John Brenner's retirement date of May 17, 2006. He then determined which sergeants had one year time in grade as sergeants as of Brenner's retirement date plus 120 days, which was September 13, 2006. He explained that he used Brenner's retirement date rather than Lackups' earlier retirement date because of the resolution of a prior labor dispute. When Lackups and Brenner both served as lieutenants, the city's police department exceeded its authorized allotment of lieutenants. In 1999, Lackups was promoted to lieutenant as a result of another sergeant's disqualification from consideration. The disqualified sergeant successfully appealed to the city's civil service commission, and he also was made a lieutenant. Lackups was not demoted to sergeant, but remained a lieutenant. The police department, then, exceeded its limit of twenty-one lieutenants. The civil service commission never amended the city charter to expand the allotted number of lieutenants from twenty-one to twenty-two. When Lackups retired, the number of lieutenants was reduced to twenty-one. Jacobs averred that his selection of the candidates eligible to take the November 1, 2007 promotional examination was not motivated by racial bias, and that, indeed, race had nothing to do with it.

Jacobs' sworn evidence, then, incorporated two salient, although somewhat complex, points. First, the "vacancy" created by Lackups' retirement was not functionally a vacancy at all, because a lieutenant could not properly be added at that time. Second, sergeants who had their "rank seniority" enhanced by virtue of the settlement agreement similarly had their time in rank augmented for the purpose of eligibility for promotion.

We conclude that the court correctly granted the defendants' motion for summary judgment as to the plaintiffs' discrimination claims. There is no genuine issue of material fact regarding the plaintiffs' failure to present evidence showing that the legitimate nondiscriminatory reason presented by the defendants— namely, Jacobs' selection of Brenner's retirement date rather than Lackups' on the basis of an overallotment of lieutenant positions and Jacobs' selection of candidates on the basis of the settlement agreement—was merely pretextual.[10] The plaintiffs nonetheless argue that summary judgment was improperly granted

because genuine issues of material fact existed as to several issues, including whether the retirement of Lackups created a vacancy, the meaning of the October 1, 2001 settlement agreement, and Jacobs' motivation in creating the list of candidates eligible to take the November 1, 2007 promotional examination.[11] We do not agree.

The plaintiffs did not introduce evidence to create a genuine issue of material fact regarding Jacobs' intent in using Brenner's retirement date. Jacobs explained that the use of Brenner's retirement date was a result of a previous overallotment of lieutenant positions. The plaintiffs did not introduce evidence that Jacobs' decision was motivated by racial bias or was irrational or pretextual in any way.

The plaintiffs also argue that evidence in the deposition of Sean Ronan, the former president of the union, created a genuine issue of material fact as to Jacobs' interpretation of the settlement agreement. Ronan testified that it was his understanding that the settlement agreement affected only pay scales. He stated that the only way the settlement agreement was enforced during his tenure was to advance employees to higher pay grades than they would have achieved without the settlement agreement. The fact that Ronan's interpretation of the settlement agreement may have differed from that of Jacobs and of the city's attorney's office does not create a genuine issue of material fact as to Jacobs' claimed discrimination. Ronan's understanding of the settlement agreement is not in itself relevant. See *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 277–78, 819 A.2d 773 (2003) (parol evidence offered to vary terms of integrated written agreement irrelevant). Perhaps more importantly, it is not Ronan's interpretation of the settlement agreement that is at issue, but, rather, it is Jacobs' motivation in interpreting the settlement agreement. Jacobs consulted with the city's attorney's office and confirmed his interpretation of the settlement agreement as to the candidates' eligibility. In such a complex scenario, there is little more an administrator could do, and his decision was objectively rational.

The plaintiffs simply did not introduce evidence that Jacobs' interpretation of the settlement agreement was based on racial bias. The settlement agreement provided: "If a promotional examination is not administered as required by Section 211 (b) of the City Charter, the Union and City agree that as to those members who eventually take the examination and are promoted . . . [t]he first said member's rank seniority shall relate back to the one hundred and twentieth (120th) day after the first vacancy." Jacobs' interpretation of the settlement agreement was a fair interpretation. Even if his interpretation was not correct, there is no evidence that his interpretation was based on racial bias. The settlement

agreement provided that it was entered into as a compromise between the city and the union based on numerous grievances filed by the union alleging that promotional examination were not timely administered under the city charter. In sum, the plaintiffs have not introduced evidence creating a genuine issue of material fact as to whether Jacobs' actions were motivated by racial bias.

We conclude that the court properly granted the defendants' motion for summary judgment as to the first and third counts of the complaint.

## II

The plaintiffs next claim that the court erred in granting the defendants' motion for summary judgment as to their contract claim. We are not persuaded.

In count two of their complaint, the plaintiffs alleged that the defendants abridged the plaintiffs' contractual rights under the collective bargaining agreement. They alleged that "[a]lthough said agreement provided for grievance arbitration of disputes arising under the city's charter, the city has historically taken the position that the . . . union . . . cannot, pursuant to General Statutes § 7-474 (g), seek enforcement through said grievance procedure of the 120 day rule set forth in [§] 211 (b) of the city's charter."

The defendants moved for summary judgment as to the second count of their complaint on the basis that it was legally insufficient and failed to state a cause of action. The court determined that, although generally the device used to challenge the sufficiency of pleadings is ordinarily a motion to strike, the use of a motion for summary judgment for that purpose was appropriate in the circumstances. See *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 535 n.10, 51 A.3d 367 (2012).[12] The court concluded that the plaintiffs failed to allege any legally cognizable cause of action in the second count, and thus granted the motion for summary judgment as to that count.

The plaintiffs argue that the court's granting the motion for summary judgment as to count two of their complaint must be reversed because the court "offered absolutely no explanation of [its] reasoning behind this conclusion and no supporting case law for this conclusion." The plaintiffs further argue that "because a determination of legal sufficiency is a question of law rather than fact, supporting rationale is crucial for purposes of the parties' understanding of the court's decision."

The plaintiffs do not argue that the second count of their complaint states a cause of action. Rather, they argue that the brevity of the court's analysis alone is sufficient to justify reversal. We disagree that the summary fashion of the court's analysis as to count two requires reversal. The defendants' motion for summary judgment as to count two is functionally a motion to

strike. Our review is plenary; see *Kumah* v. *Brown*, 307 Conn. 620, 626, 58 A.3d 247 (2013) (plenary review of motion to strike); *LaFlamme* v. *Dallessio*, supra, 261 Conn. 250 (plenary review of motion for summary judgment); and the facts as to this claim are not in dispute for this purpose. Accordingly, the legal analysis undertaken by the trial court is not essential to our consideration of the issue on appeal. See *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395–96, 757 A.2d 1074 (2000). Because the plaintiffs have offered no reasons why the court was legally incorrect in granting the motion for summary judgment as to count two, we decline to reverse the court's judgment.

## III

The plaintiffs finally claim that the court erred in granting the defendants' motion for summary judgment as to the fourth count of their complaint, which alleged intentional infliction of emotional distress. We are not persuaded.

The plaintiffs alleged in count four that the conduct of the defendants was extreme and outrageous and caused the plaintiffs severe emotional distress.[13] The court concluded that the defendants had met their burden of establishing the absence of a genuine issue of material fact that their conduct did not meet the legal threshold necessary for a claim of intentional infliction of emotional distress. The court found that no reasonable trier of fact could conclude that Jacobs' conduct relating to the promotional examination for lieutenant was extreme and outrageous.

The plaintiffs essentially make the same argument with this claim as they did in part I of this opinion. Our analysis of this claim is the same as our analysis in part I of this opinion. It is similarly plain that, regardless of the correctness of the defendants' decisions, their conduct was not outrageous for the purpose of the tort of intentional infliction of emotional distress.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The Bridgeport Police Union, Council 15, Local 1159, was also named as a defendant. Lonnie Blackwell was a third party defendant. Only the city, the board, and Jacobs filed the motion for summary judgment and this appeal. Therefore, we refer in this opinion to the city, the board, and Jacobs as the defendants.

[2] The complaint alleged that of the five unqualified candidates, two were African-American, one was Hispanic, and two were Caucasian. The complaint further set forth that Reyes was Caucasian of race and Hispanic of ethnicity, and that the remaining plaintiffs were all Caucasian of race and white of color.

[3] The plaintiffs have disputed a portion of this conclusion, as will be discussed in part I of this opinion. Their position is that only seniority for pay purposes was extended backward by the agreement.

[4] The plaintiffs claim in count one of their complaint that the defendants deprived them of their federal constitutional rights to equal protection and

due process under 42 U.S.C. § 1983. In the third count they claim that they were so deprived under the Connecticut constitution. The plaintiffs do not argue that the Connecticut constitution affords them a greater degree of protection than the federal constitution. We therefore treat those provisions as affording the same level of protection. See *Kostrzewski* v. *Commissioner of Motor Vehicles*, 52 Conn. App. 326, 339 n.8, 727 A.2d 233, cert. denied, 249 Conn. 910, 733 A.2d 227 (1999).

With respect to the plaintiffs' due process claims, we conclude that the court properly granted summary judgment. "Our due process inquiry takes the form of a two part analysis. [W]e must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was . . . due." (Internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 722, 980 A.2d 880 (2009). "[I]ntentional conduct by state actors [is] a prerequisite for a due process violation . . . ." *Shannon* v. *Jacobowitz*, 394 F.3d 90, 93 (2d Cir. 2005). For the reasons stated in part I of this opinion, we hold that the plaintiffs have not produced sufficient evidence to raise a genuine issue of material fact that Jacobs' actions were made in anything other than good faith. There is no genuine issue of material fact on the issue of deprivation of due process rights.

[5] "The United States Supreme Court has set forth three theories of discrimination, each of which requires a different prima facie case and corresponding burden of proof. These theories are: (1) the [pretext] theory . . . (2) the disparate impact theory . . . and (3) the [mixed motives] theory." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 225–26, 939 A.2d 541 (2008). The plaintiffs' argument is couched in the framework of the pretext theory.

[6] As stated in part I of this opinion, Lackups' retirement reduced the number of lieutenants to the full number of authorized positions. Lieutenant John Brenner retired later, on May 17, 2006; his retirement reduced the number of lieutenants to one fewer than the authorized number. The candidates who were not Caucasian were not eligible at the time of Lackups' retirement, but were eligible, according to the defendants, when Brenner retired.

[7] The plaintiffs' underlying thesis is that city personnel manipulated the eligibility requirements so that African-Americans might be promoted to the position of lieutenant.

[8] Logically, the ultimate disposition of the matter, of course, hinges not on whether the determination of the date of the vacancy was actually correct, but, rather, on whether there was any genuine issue of material fact as to whether Jacobs' decisions were discriminatory.

[9] The settlement agreement arguably backdated seniority, in situations where the promotional examination was held more than 120 days after the vacancy was created, to the 120 day mark. Thus, hypothetically, if a vacancy was created on January 1, the 120 day mark would be May 2. If an actual promotion to fill the vacancy did not occur until September 1, the person's time in rank would be deemed to begin on May 2.

[10] The plaintiffs also claim that the trial court improperly assessed their burden of proof as to the pretext factor of the *McDonnell Douglas Corp.* analysis. The court did not improperly assess their burden of proof. The court determined that the plaintiffs had not produced any significant evidence of discriminatory intent, and we agree with the court's assessment.

[11] The plaintiffs also argue that the court ignored the evidence that they had presented. We conclude that this claim has no merit.

[12] "[A]lthough, generally, the device used to challenge the sufficiency of the pleadings is a motion to strike; see Practice Book § 10-39; our case law [has] sanctioned the use of a motion for summary judgment to test the legal sufficiency of a pleading [if a party has waived its right to file a motion to strike by filing a responsive pleading]. . . . Under these circumstances, we have acknowledged that, [i]f it is clear on the face of the complaint that it is legally insufficient and that an opportunity to amend it would not help the plaintiff, we can perceive no reason why the defendant should be prohibited from claiming that he is entitled to judgment as a matter of law and from invoking the only available procedure for raising such a claim after the pleadings are closed. . . . Thus, failure by the [defendant] to [strike] any portion of the. . . . complaint does not prevent [him] from claiming that the [plaintiff] had no cause of action and that a judgment [in favor of the defendant was] warranted. . . . [Indeed], this court repeatedly has recognized that the desire for judicial efficiency inherent in the summary judgment procedure would be frustrated if parties were forced to try a case

where there was no real issue to be tried. . . . [Therefore], [t]he use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading." (Citation omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 535 n.10.

[13] "In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citation omitted; internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 846, 888 A.2d 104 (2006).

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" (Citation omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).