MYRNA LABOW *v.* ROBERT RUBIN ET AL.
(AC 25283)

Schaller, Flynn and Harper, Js.*

---

* The listing of judges reflects their status on this court as of the date of oral argument.

Argued December 5, 2005—officially released May 16, 2006

*Nathalie Feola-Guerrieri*, with whom were *Myrna LaBow*, pro se, and, on the brief, *Daniel Shepro*, for the appellant (plaintiff).

*Barbara M. Schellenberg*, for the appellee (named defendant).

*Gwen E. Adamson*, for the appellee (defendant Ronald LaBow).

*Opinion*

SCHALLER, J. The plaintiff, Myrna LaBow, appeals from the summary judgment rendered by the trial court in favor of the defendants, Robert Rubin and Ronald

LaBow.[1] On appeal, the plaintiff claims that the court improperly (1) granted the defendants' motions for summary judgment as to the first count of her amended complaint, which sought to quiet title on the basis of collateral estoppel, (2) concluded that her pending appeal from a partition judgment did not act as a bar to the application of collateral estoppel to her quiet title count, and (3) granted the defendants' motions for summary judgment as to her intentional infliction of emotional distress and conspiracy counts on the basis of the tort statute of limitations contained in General Statutes § 52-577. We disagree and accordingly affirm the judgment of the trial court.

The facts relevant to this appeal are as follows. "On July 9, 1974, [Myrna LaBow] initiated a dissolution of marriage action against her then husband, Ronald LaBow. At that time, the LaBows jointly owned, with rights of survivorship, twenty-nine acres of property located in the towns of Weston and Fairfield. The property consists of a twenty-two acre parcel in Weston and an adjacent seven acre parcel in Fairfield.

"On November 5, 1975, while [the dissolution] action was pending, Ronald LaBow transferred his interest in the twenty-two acres in Weston to [a trust with] Richard H. Valentine [acting as] trustee. There is an ongoing dispute between the LaBows as to the validity of that trust, which was set up by Ronald LaBow as settlor. At the time the dissolution decree was issued by the court . . . on August 28, 1978, the twenty-two acres in Weston were in the trust, but Ronald LaBow still had record title to the seven acres in Fairfield. The dissolution decree . . . did not transfer title to or direct the conveyance of either parcel to [Myrna LaBow]. On Septem-

[1] Ronald LaBow is a defendant in this action both as an individual and as a trustee. Any reference to Ronald LaBow will be as to his dual capacity unless otherwise indicated.

ber 18, 1978, after the dissolution, Ronald LaBow transferred the Fairfield property to Anthony DeVita . . . .

"Subsequently, on July 5, 1979, Valentine, acting as trustee, initiated [a] partition action against [Myrna LaBow] as to the Weston parcel. . . . In 1983, Valentine stepped down as trustee, and Ronald LaBow succeeded him in that capacity. Thereafter, Rubin, a neighbor of the LaBows, purchased the Weston parcel from the trust on January 5, 1985, as well as the Fairfield parcel from DeVita on January 16, 1985. Consequently, since January, 1985, Rubin and [Myrna LaBow] have owned the Weston and Fairfield parcels as tenants in common.

"After Rubin acquired an interest in the properties, [Myrna LaBow] filed a complaint against him, dated November 12, 1985, in which she alleged that the parcels were conveyed to him fraudulently. Subsequently, Rubin joined [the] partition action as a party plaintiff on November 25, 1985, and on June 16, 1989, amended the partition complaint to include the Fairfield property." (Citation omitted; internal quotation marks omitted.) *Valentine* v. *LaBow*, 95 Conn. App. 436, 438–40, 897 A.2d 624 (2006). The record reflects that the plaintiff filed a series of amended special defenses and a multiple count counterclaim, in which she continually challenged the validity of Rubin's ownership interest in the properties. *LaBow* v. *LaBow*, 69 Conn. App. 760, 763, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002).

"On December 16, 1993, Rubin filed a motion for summary judgment with respect to the partition complaint and [Myrna LaBow's] special defenses and counterclaim. . . . [Thereafter] [o]n February 14, 1994, the [court in the partition action] *Fuller, J.* concluded that

all the counts of [Myrna LaBow's] counterclaim were barred by 'several' of Rubin's special defenses. . . .

"The court, therefore, granted Rubin's motion for summary judgment, but declined to decide whether the partition would be in kind or by sale. Accordingly, further proceedings were ordered for these purposes." *Valentine* v. *LaBow*, supra, 95 Conn. App. 440–41. Thereafter, in February, 2003, the plaintiff commenced the present quiet title action against Rubin and Ronald LaBow, as an individual and in his capacity as a trustee. On March 29, 2003, an additional hearing was held to determine whether the partition would be in kind or by sale. At the hearing, the plaintiff moved to consolidate the present action with the partition action. The court, *Stevens, J.*, denied the motion and rendered judgment of partition by sale. Id., 442. The plaintiff subsequently appealed.

On May 12, 2003, Ronald LaBow filed a motion for summary judgment with respect to the plaintiff's complaint in the present action. Specifically, he argued that the plaintiff's complaint was barred by the special defenses of estoppel, res judicata or the statute of limitations contained in § 52-577.

On May 22, 2003, the plaintiff filed an amended, three count complaint. The first count of the amended complaint alleged a cause of action to quiet title to the Weston and Fairfield properties pursuant to General Statutes § 47-31. The plaintiff alleged that the properties were conveyed fraudulently to Rubin and that she was the "sole rightful owner" of the properties. The second and third counts of the amended complaint asserted claims of intentional infliction of emotional distress and conspiracy to defraud, respectively.

On August 28, 2003, Rubin filed a motion for summary judgment with respect to all three counts of the plaintiff's amended complaint. In support of his motion for

summary judgment, Rubin argued that the plaintiff's first count was barred by the doctrines of res judicata and collateral estoppel, as well as the doctrine of laches. With respect to counts two and three, Rubin moved for summary judgment on the ground that each was barred by the three year statute of limitations contained in § 52-577.

On March 12, 2004, the court rendered summary judgment as to the first count of the plaintiff's amended complaint, which sought to quiet title, on the basis of collateral estoppel.[2] Specifically, the court concluded that the issue of title to the Weston and Fairfield properties actually had been litigated and determined in the partition action. The court further concluded that the plaintiff's second and third counts, which alleged intentional infliction of emotional distress and civil conspiracy, respectively, were barred by several doctrines. With respect to these counts, the court rendered summary judgment in favor of Ronald LaBow on the basis of collateral estoppel and res judicata. The court also rendered summary judgment on these counts in favor of Ronald LaBow and Rubin on the ground that these counts alleged tort claims and, as such, were barred by the three year statute of limitations contained in § 52-577. The court, therefore, granted the defendants' motions for summary judgment as to all counts of the plaintiff's amended complaint. This appeal followed. Additional facts will be provided where necessary.

I

The plaintiff first claims that the court improperly rendered summary judgment as to the first count of

---

[2] As noted previously, Rubin also filed a motion for summary judgment with respect to the quiet title count on the basis of laches. Because the court rendered summary judgment on the basis of collateral estoppel, it did not address the laches argument.

her amended complaint, which sought to quiet title, on the basis of collateral estoppel.[3] We disagree.[4]

As a preliminary matter, we set forth the applicable standard of review. Practice Book § 17-49 provides in relevant part that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . .

[3] Although the court references both res judicata and collateral estoppel, it is clear from our review of the memorandum of decision that the court rendered summary judgment as to the plaintiff's quiet title count on the basis of collateral estoppel.

[4] Ronald LaBow asserts as an alternate ground for affirmance that, despite the express language of his motion for summary judgment and its attached memorandum of law, he actually did not move for summary judgment as to the quiet title count. Rather, Ronald LaBow argues that through his answer to the plaintiff's complaint, he disclaimed any interest in the property pursuant to General Statutes § 47-31 (d) and, therefore, title was quieted as to him and any further ruling was unnecessary. Ronald LaBow previously had filed with this court a motion to dismiss this appeal as moot, with respect to him, in part, on the basis of this argument. This court, however, rejected that motion and, accordingly, we will address the plaintiff's claim that collateral estoppel does not bar her quiet title count against Ronald LaBow.

Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, 92 Conn. App. 835, 840–41, 888 A.2d 104 (2006).

"Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment may be appropriate . . . . Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum." (Citation omitted; internal quotation marks omitted.) *Bouchard* v. *Sundberg*, 80 Conn. App. 180, 186, 834 A.2d 744 (2003).

"Whether the court properly applied the doctrine of collateral estoppel is a question of law for which our review is plenary. . . . The fundamental principles underlying the doctrine of collateral estoppel are well established. The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . Issue preclusion arises when an issue is actually litigated and determined by a valid and final judgment, and that determination is essential to the judgment. . . . Thus, the issue must have been fully and fairly litigated in the first action. . . . Collateral estoppel express[es] no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest. . . .

"An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of

the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; emphasis added; internal quotation marks omitted.) *Bishop* v. *Zoning Board of Appeals*, 92 Conn. App. 600, 605–606, 886 A.2d 470 (2005), cert. denied, 277 Conn. 906, 894 A.2d 986 (2006).

On appeal, the plaintiff argues that summary judgment was inappropriate because the issue of title to the Weston and Fairfield parcels was neither fully and fairly litigated nor actually decided in the partition action.[5] The plaintiff also argues that the issue of title

---

[5] At the outset, we address the plaintiff's argument that because Ronald LaBow was not a party, either as an individual or trustee, to Rubin's motion for summary judgment in the partition action, the plaintiff cannot be collaterally estopped, in the present action, from raising the issue of title with respect to Ronald LaBow. This argument ignores the concept of privity.

"[C]ollateral estoppel, or issue preclusion, is that aspect of res judicata that prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties *or those in privity with them upon a different claim.*" (Emphasis added; internal quotation marks omitted.) *Albahary* v. *Bristol*, 276 Conn. 426, 444, 886 A.2d 802 (2005). "While the concept of privity is difficult to define precisely, it has been held that a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity. . . . In determining whether privity exits, we employ an analysis that focuses on the functional relationships of the parties. Privity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Citation omitted; internal quotation marks omitted.) *Mount Vernon Fire Ins. Co.* v. *Morris*, 90 Conn. App. 525, 536, 877 A.2d 910, cert. granted on other grounds, 276 Conn. 907, 884 A.2d 1027 (2005).

We have stated that a successor in interest is in privity with a previous owner for purposes of collateral estoppel. *Waterbury Hotel Equity, LLC* v. *Waterbury*, 85 Conn. App. 480, 495, 858 A.2d 259 ("[t]he plaintiff, in the present case, is a successor in interest and therefore in privity with the previous owners because it gained title to the subject property by deed"), cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). In the present case, Robert

was not necessarily determined in the partition action. These arguments misconstrue the doctrine of collateral estoppel and the record in this case.

The allegations contained in the first count of the plaintiff's amended complaint expressly asserted that she was "the sole rightful owner" of the Weston and Fairfield parcels, and once again alleged that the parcels had been fraudulently conveyed to Rubin. Moreover, as the plaintiff properly concedes in her brief, the present quiet title action raises the issue of title to the Weston and Fairfield parcels. Contrary to the plaintiff's contentions, however, she also raised the issue of title in the partition action. There, through numerous special defenses and a multiple count counterclaim, the plaintiff continually challenged the validity of Rubin's ownership interest and declared herself the "rightful owner" of the properties. As noted previously, "[a]n issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." (Internal quotation marks omitted.) *Bishop* v. *Zoning Board of Appeals,* supra, 92 Conn. App. 606. It is clear from the record in this case that the plaintiff has raised the issue of title in both her present quiet title action and her previous partition action.

Having concluded that the issue of title was raised properly in both proceedings, we next turn to the partition court's consideration of the issue. In its memorandum of decision, the trial court accurately summarized the partition court's consideration of the issue of title. "With regard to the Fairfield property, [the partition court] noted that Ronald LaBow owned a one-half interest at the commencement of the dissolution action,

Rubin is a successor in interest to Ronald LaBow. Consequently, Ronald LaBow and Robert Rubin are in privity and, as such, collateral estoppel may be invoked by Ronald LaBow.

and that Myrna LaBow therefore could have obtained Ronald LaBow's interest in the course of those proceedings only if the dissolution court had transferred that interest to her in accordance with its equitable jurisdiction. [The partition court] noted, however, that the dissolution court did not award Myrna LaBow that interest as part of the dissolution decree and that Myrna LaBow made no attempt to modify that decree within the statutorily permitted period. [The partition court] stated that 'Ronald LaBow then sold the Fairfield property to . . . DeVita for $40,000. This asset was known to [Myrna LaBow] at the time of the divorce, and the [dissolution] decree eliminated any legal claim of [Myrna LaBow] to it. There is also nothing in the record to indicate that DeVita was anything other than a bona fide purchaser [for] value and, even if he paid less than the fair market value of the property at that time, that is not [Myrna LaBow's] concern. Accordingly, *Rubin's purchase of the Fairfield property from DeVita in 1985 was free and clear of any claims of [Myrna LaBow].'* . . .

"With regard to the Weston property, [the partition court] again began from the premise that Ronald LaBow owned a one-half interest at the commencement of the dissolution action. [The partition court] then went on to consider the effect of Ronald LaBow's conveyance of his interest in the property to the trust in 1975. [The partition court] noted that if the transfer was valid, the interest ceased to be a marital asset and could not have been awarded to Myrna LaBow in the dissolution action, and, thus, she could make no claim to that interest in the property. On the other hand, [the partition court] noted that if the transfer was invalid, Myrna LaBow could have attempted to obtain title by bringing a claim to set aside the transfer as fraudulent and then seeking to have the interest awarded to her in the dissolution action. [The partition court] observed that Myrna LaBow could have sought to have the conveyance set

aside either in the course of the dissolution proceeding or by bringing a separate tort action alleging a fraudulent conveyance. . . .

"[The partition court] further examined Myrna LaBow's specific opportunities to have the conveyance set aside and to have the interest in the property awarded to her. First, the court noted that it was unclear whether the [dissolution] court considered a claim of fraudulent conveyance when entering the dissolution decree in 1978, but that if Myrna LaBow had raised the claim at that time, the court could have considered it. Second, [the partition court] addressed the prior modification proceedings between the LaBows, in which the court concluded that the trust was a sham. [The partition court] pointed out that the modification court nevertheless did not award Ronald LaBow's former one-half interest in the property to Myrna LaBow, and that she did not appeal [from] that decision. Third, [the partition court] determined that Myrna LaBow failed to bring a separate proceeding to set aside the transfer to the trust as fraudulent within the three year limitation period set forth in § 52-577 for bringing such an action." (Citations omitted; emphasis in original.) In light of the foregoing, we conclude that the partition court thoroughly addressed the issue of title and that it was actually litigated and decided in the partition action.

The plaintiff next argues that the issue of title was not "necessarily determined" in the partition action. Specifically, the plaintiff argues that even if the partition court concluded that Rubin held record title to the properties, it did not "necessarily determine" that Rubin held undisputed, valid title. According to the plaintiff, absent an explicit finding that Rubin holds valid title, it was improper for the court to conclude that the plaintiff's title disputes were "necessarily determined" by

the partition court. We do not agree that this distinction is determinative.

"[A]n issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Internal quotation marks omitted.) *Bishop* v. *Zoning Board of Appeals*, supra, 92 Conn. App. 606. Because, pursuant to General Statutes § 52-495, a person is entitled to partition only if he or she is "holding real property as a joint tenant, tenant in common, coparcener or tenant in tail"; *Fernandes* v. *Rodriguez*, 255 Conn. 47, 56, 761 A.2d 1283 (2000), on appeal after remand, 90 Conn. App. 601, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006); the partition court could not have rendered summary judgment in the partition action without first determining that Rubin was a tenant in common with the plaintiff. In order to make that determination, the court had to rule on the plaintiff's special defenses and counterclaim, which expressly raised the issue of title. The partition court, therefore, "necessarily determined" the issue of title.[6]

In sum, we conclude that the issue of title actually was litigated and necessarily determined in the partition action and, therefore, the court properly rendered summary judgment in favor of the defendants on the basis of collateral estoppel.

## II

The plaintiff next claims that her appeal in the partition action precludes the court from applying the doc-

---

[6] The plaintiff also argues that because she had not brought a statutory quiet title action in any previous litigation, collateral estoppel cannot bar her present claim. This argument misinterprets the doctrine of collateral estoppel. It is the issue that is raised that is of paramount importance, not the type of action in which it is raised.

trine of collateral estoppel to her quiet title count. We disagree.

Our Supreme Court has explained that "[t]he effect of a pending appeal upon an otherwise final judgment has aptly been characterized as [o]ne of the most troublesome problems in applying the rule of finality [of judgments]. . . . In Connecticut, this court has held the judgment of a trial court to be final, despite a pending appeal, when the issue was . . . the applicability of the rules of res judicata." (Citations omitted; internal quotation marks omitted.) *Enfield Federal Savings & Loan Assn.* v. *Bissell,* 184 Conn. 569, 573, 440 A.2d 220 (1981). Moreover, this court has concluded that a pending appeal does not preclude the application of the narrower doctrine of collateral estoppel. *Carnemolla* v. *Walsh,* 75 Conn. App. 319, 327–28, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003). The plaintiff's attempts at distinguishing the foregoing cases from the present case are unpersuasive and, accordingly, we conclude that the plaintiff's pending appeal in the partition action does not preclude the application of collateral estoppel to her quiet title count.[7]

### III

The plaintiff's final claim is that the court improperly granted the defendants' motions for summary judgment as to the second and third counts of her amended complaint on the basis of the three year tort statute of limitations contained in § 52-577. Initially, the plaintiff argues that the statute of limitations does not apply because her second count, intentional infliction of emotional distress, and her third count, civil conspiracy, arise from a quiet title action. The plaintiff further argues that even if the statute of limitations applies, both counts were filed timely and that the continuing

---

[7] We note that the judgment of the partition court has been affirmed by this court in *Valentine* v. *LaBow,* supra, 95 Conn. App. 436.

course of conduct doctrine tolled the running of the statute. We disagree.

The following facts are relevant to the plaintiff's claim. The court, in rendering summary judgment as to the plaintiff's second and third counts, provided alternate grounds for its decision. With respect to Ronald LaBow, the court concluded that the plaintiff's second and third counts were barred by the related doctrines of res judicata and collateral estoppel, as well as the three year tort statute of limitations contained within § 52-577. As for Rubin, the court rendered summary judgment on the plaintiff's second and third counts solely on the basis of the statute of limitations contained within § 52-577.

As a preliminary matter, we reiterate that "[o]ur review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Gagnon* v. *Housatonic Valley Tourism District Commission*, supra, 92 Conn. App. 841.

"Section 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . General Statutes § 52-577 provides: No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of. This court has determined that [s]ection 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof

delaying the start of the limitation period until the cause of action has accrued or the injury has occurred." (Citations omitted; internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, 85 Conn. App. 145, 148–49, 856 A.2d 518 (2004). The three year limitation period of § 52-577, therefore, "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." (Internal quotation marks omitted.) Id., 150. "The question whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 833, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

We first address the plaintiff's contention that the three year tort statute of limitations contained in § 52-577 does not apply in the present case because her second and third counts arise from a quiet title action that does not have an applicable statute of limitations. This argument is unpersuasive. Although the first count of the plaintiff's amended complaint does raise a quiet title claim, that fact is largely irrelevant with respect to our current discussion. This is because "[w]here two distinct causes of action arise from the same wrong, each is controlled by the statute of limitations appropriate to it." *Perzanowski* v. *New Britain*, 183 Conn. 504, 506, 440 A.2d 763 (1981); *Hickey* v. *Slattery*, 103 Conn. 716, 719–20, 131 A. 558 (1926) ("two distinct causes of action may arise out of one delict, and where that occurs, each is governed by the statute of limitations appropriate to it"), overruled in part on other grounds by, *Tuohey* v. *Martinjak*, 119 Conn. 500, 507, 177 A. 721 (1935), and *Hitchcock* v. *Union & New Haven Trust Co.*, 134 Conn. 246, 259–60, 56 A.2d 655 (1947). The plaintiff's second and third counts, which alleged intentional infliction of emotional distress and civil conspiracy, respectively, are unquestionably tort actions. See *Heim* v. *California Federal Bank*, 78 Conn. App.

351, 369, 828 A.2d 129, cert. denied, 266 Conn. 911, 832 A.2d 70 (2003); *Beizer* v. *Goepfert*, 28 Conn. App. 693, 702, 613 A.2d 1336 ("conspiracy to defraud is generally classified as a tort claim"), cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, 113 S. Ct. 1416, 122 L. Ed. 2d 786 (1993). Consequently, each is controlled by the three year tort statute of limitations contained within § 52-577.

We next address whether § 52-577 bars the second and third counts of the plaintiff's amended complaint. "When conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, supra, 85 Conn. App. 149–50. The wrongful conduct alleged in the complaint centers on the transfers of the Weston and Fairfield properties. The last of these transfers took place in January, 1985. The plaintiff's present action was filed in February, 2003. As such, these claims were filed well beyond the three year statutory period set forth in § 52-577 and, therefore, are barred by that statute.

Finally, the plaintiff argues that, if applicable, the statute of limitations contained in § 52-577 is tolled by the continuing course of conduct doctrine because the defendants continually conspired to deprive her of "her full ownership, and just and reasonable use of [the] [p]roperty," which has caused her continued emotional distress. Specifically, the plaintiff claims that Rubin continues to engage in actions such as cutting trees and trespassing on the property.

The following additional facts are relevant to the plaintiff's argument. In rendering summary judgment, the court concluded that the plaintiff's claims of continued trespass and nuisance were not based on any facts

alleged in the plaintiff's pleadings. Rather, these facts were alleged in a supplemental affidavit submitted in opposition to the motion for summary judgment. Accordingly, the court concluded that the plaintiff's continuing course of conduct claim was "insufficient to defeat summary judgment."

In support of this conclusion, the court correctly noted that we addressed a similar situation in *Collum* v. *Chapin*, 40 Conn. App. 449, 671 A.2d 1329 (1996). In *Collum*, as in the present case, the plaintiff argued that the continuous course of conduct doctrine tolled the limitations period contained in § 52-577 and attempted to rely on an affidavit, filed as part of his opposition to the defendants' motion for summary judgment, which stated that the defendants continued to engage in tortious conduct. There, we concluded that "summary judgment is proper where the affidavits do not set forth circumstances which would serve to avoid or impede the normal application of the particular limitations period. . . . Affidavits are not pleadings, however, and a plaintiff cannot, under the guise of fortifying the complaint, present an entirely new cause of action or expand the scope of his cause of action by means of a counter-affidavit. . . . The issue must be one which the party opposing the motion is entitled to litigate under his pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Internal quotation marks omitted.) Id., 453. The present case is squarely on point with *Collum*. We conclude, therefore, that the plaintiff's claims are insufficient to defeat summary judgment.

In sum, we conclude that the statute of limitations contained in § 52-577 is applicable to, and bars, the second and third counts of the plaintiff's amended complaint. The court, therefore, properly rendered sum-

mary judgment in favor of the defendants with respect to the second and third counts.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

[8] The plaintiff also claims that the court improperly granted Ronald LaBow's motion for summary judgment as to her intentional infliction of emotional distress and conspiracy claims on the basis of the doctrines of collateral estoppel and res judicata. Because we conclude that the court properly rendered summary judgment with respect to these counts on the basis of the statute of limitations contained in General Statutes § 52-577, we need not address the court's alternate grounds for rendering summary judgment.

* The listing of judges reflects their status on this court as of the date of oral argument.