MICHAEL J. PITEO *v.* BRENT GOTTIER ET AL.
(AC 29344)

McLachlan, Harper and Lavery, Js.

Argued November 19, 2008—officially released February 3, 2009

*James Colin Mulholland,* for the appellant (plaintiff).

*Michael T. McCormack,* with whom, on the brief, was *Elizabeth K. Adams,* for the appellees (defendants).

McLACHLAN, J. The sole question in this appeal is whether the trial court properly concluded that there was no tolling of the statute of limitations applicable to tort claims because of the continuous representation of a client by an investment advisor. We conclude that the court properly refused to extend the continuous representation rule to such a relationship. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiff's appeal. The plaintiff, Michael J. Piteo, brought this action against the defendants, Brent Gottier, a registered investment representative, and Webster Investment Services, Inc.[1] The plaintiff's amended complaint alleged that the defendants (1) breached their fiduciary duties to the plaintiff by closing and transferring his individual retirement accounts (IRAs) without his consent and in a financially imprudent manner and (2) breached their duty to provide the plaintiff with competent financial advice, services and representation by closing and transferring his IRAs without his consent and in a financially imprudent manner.[2] The plaintiff alleges misconduct by the defendants on March 2, 2000. The plaintiff commenced this action against the defendants by service of process on April 3, 2003. The defendants denied the plaintiff's allegations and asserted a special defense to counts one and two that the plaintiff's claims were barred by General Statutes § 52-577. The defendants filed a motion for partial summary judgment and a memorandum of law

[1] Gottier worked for Webster Investment Services, Inc., at the time of the alleged torts.

[2] The third count of the complaint, which alleged that the defendants breached their contract with the plaintiff by closing and transferring his IRAs without his consent, was tried to the court. Judgment was rendered in favor of the defendants on that count. The plaintiff did not challenge that determination on appeal.

in support thereof, on the basis of § 52-577 and supported by Gottier's affidavit. The plaintiff filed a memorandum of law in opposition to the motion for partial summary judgment, on the basis of the "doctrine of continued representation" and supported by his affidavit. The plaintiff stated in his affidavit that he was unaware of the defendants' tortious acts until April 12, 2000, and that he continued to be represented by the defendants until April, 2001. On January 26, 2006, the court determined that the doctrine of continuous representation recognized in *DeLeo* v. *Nusbaum*, 263 Conn. 588, 821 A.2d 744 (2003), did not apply and granted the defendants' motion for partial summary judgment. The plaintiff timely filed this appeal.

The plaintiff argues that *DeLeo* announced a broad policy on the application of § 52-577 in matters involving professionals who owe fiduciary obligations to their clients.

As a preliminary matter, we set forth the applicable standard of review. Practice Book § 17-49 provides in relevant part that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore,

cannot refute evidence properly presented to the court [in support of a motion for summary judgment]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *LaBow* v. *Rubin*, 95 Conn. App. 454, 460–61, 897 A.2d 136, cert. denied, 280 Conn. 933, 909 A.2d 960 (2006).

"Section 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues. . . . General Statutes § 52-577 provides: No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of. This court has determined that [§] 52-577 is an occurrence statute, meaning that the time period within which a plaintiff must commence an action begins to run at the moment the act or omission complained of occurs. . . . Moreover, our Supreme Court has stated that [i]n construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of, we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The three year limitation period of § 52-577, therefore, begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury. . . . The question whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo." (Citations omitted; internal quotation marks omitted.) Id., 468–69.

"The relevant date of the act or omission complained of, as that phrase is used in § 52-577, is the date when the negligent conduct of the defendant occurs and not the date when the plaintiffs first sustain damage. When

conducting an analysis under § 52-577, the only facts material to the trial court's decision on a motion for summary judgment are the date of the wrongful conduct alleged in the complaint and the date the action was filed." (Internal quotation marks omitted.) *Farnsworth* v. *O'Doherty*, 85 Conn. App. 145, 149–50, 856 A.2d 518 (2004). "Ignorance of his rights on the part of the person against whom the statute has begun to run, will not suspend its operation. He may discover his injury too late to take advantage of the appropriate remedy. Such is one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time." *Bank of Hartford County* v. *Waterman*, 26 Conn. 324, 330 (1857).

In *DeLeo*, our Supreme Court announced seven reasons that persuaded it to adopt the continuous representation doctrine to permit the tolling of a statute of limitations: (1) the similar policy and application of the accepted continuing course of conduct and continuous treatment doctrines, (2) the harm to an attorney-client relationship that follows from requiring a client to bring an action against his attorney during litigation, (3) the harm to both causes of action when a client must defend his attorney's actions in an appeal and contest the attorney's actions in a malpractice action, (4) the decreased risk of loss of evidence due to the preservation of pleadings and transcripts in litigation, (5) the risk that an attorney might "postpon[e] the inevitable event of defeat beyond the statute of limitations period to protect himself from liability for his actions," (6) a client's right to repose confidence in an attorney's ability and good faith, and (7) the goal of "enabling the attorney to correct, avoid or mitigate the consequences of an apparent error . . . ." (Internal quotation marks omitted.) *DeLeo* v. *Nusbaum*, supra, 263 Conn. 594–96. The court also recognized the goals of a statute of limitations: "(1) [to] prevent the unexpected enforcement of

stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) Id., 596.

In light of those competing policy interests, our Supreme Court adopted a modified continuous representation doctrine for cases of alleged legal malpractice during litigation, tolling the statute of limitations contained in § 52-577 when a "plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; *and* (2) either that the plaintiff did not know of the alleged malpractice *or* that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period." (Emphasis in original.) Id., 596–97. The court noted that it "anticipate[d] that these standards would be applicable to all attorney malpractice cases [but] acknowledged that the implications of tolling for attorney-client relationships in the context of litigation may not be the same as those for other attorney-client relationships. Accordingly, [the] holding [was] *limited to* cases in which an attorney is *alleged* to have committed *malpractice during the course of litigation*." (Emphasis added.) Id., 597 n.4.

The plaintiff advocates the application of the continuous representation doctrine adopted in *DeLeo* to all fiduciary relationships, including the relationship between the plaintiff investor and defendant securities broker. The plaintiff argues that the continuous representation doctrine should be applied equally to all professionals, including accountants and financial

investment professionals, who owe fiduciary obligations to their clients. We disagree.

We do not believe that our Supreme Court intended the continuous representation doctrine to apply a priori to all professionals owing a fiduciary duty to their clients.[3] Accordingly, we must examine the factors set out in *DeLeo*, as well as the goals of a statute of limitations, to determine their application to the relationship between the plaintiff and the individual defendant.

First, we must compare the plaintiff's proposed scheme to the continuing course of conduct and continuous treatment doctrines.[4] We see no great similarity in policy and application. To toll the statute of limitations indefinitely so long as the plaintiff chooses to keep his investments in the hands of the defendants, maintaining the defendants' theoretical capability of restoring the plaintiff to the position he was in before the alleged

---

[3] See *Rosato* v. *Mascardo*, 82 Conn. App. 396, 407, 844 A.2d 893 (2004) ("[T]he holding of *DeLeo* is quite limited. In a footnote, the court explicitly limited its holding to 'cases in which an attorney is alleged to have committed malpractice during the course of litigation.' *DeLeo* v. *Nusbaum*, supra, 263 Conn. 597 n.4. Because the breadth of the holding was limited even within the context of legal malpractice, this court declines to read that holding expansively and to apply it to cases involving medical malpractice.").

[4] "[T]o establish a continuous course of treatment for purposes of tolling the statute of limitations in medical malpractice actions, the plaintiff is required to prove: (1) that he or she had an identified medical condition that required ongoing treatment or monitoring; (2) that the defendant provided ongoing treatment or monitoring of that medical condition after the allegedly negligent conduct, or that the plaintiff reasonably could have anticipated that the defendant would do so; and (3) that the plaintiff brought the action within the appropriate statutory period after the date that treatment terminated. . . . A comparison of the elements of the continuous treatment doctrine with the elements of the continuing course of conduct doctrine reveals that the primary difference between the doctrines is that the former focuses on the plaintiff's reasonable expectation that the treatment for an existing condition will be ongoing, while the latter focuses on the defendant's duty to the plaintiff arising from his knowledge of the plaintiff's condition." (Citation omitted.) *Grey* v. *Stamford Health System, Inc.*, 282 Conn. 745, 754–55, 924 A.2d 831 (2007).

breach of fiduciary duty (in this case by reimbursing him for market losses), would reach far more broadly than those accepted doctrines, which apply to discrete medical or legal matters. Second, to require a client to bring an action against his investment professional before he would otherwise choose to terminate the relationship is not the great hardship recognized in *DeLeo*. We do not encourage clients to refrain from second-guessing all professionals owing them fiduciary obligations. We see no reason to encourage investors who suspect something amiss to rely solely on their fiduciary's advice and to refrain from seeking outside advice. Third, requiring a client to bring a legal action against his investment professional while the professional maintains his investments does not create the same type of conflict as forcing a "client into adopting inherently different litigation postures . . . defending the attorney's actions in the appeal and contesting the attorney's actions in the malpractice action." (Internal quotation marks omitted.) Id., 595. Fourth, one policy of the statute of limitations, namely, preventing the loss of evidence before trial, is not served in such cases as it is in legal malpractice actions. There are generally no transcripts or pleading like mechanisms that preserve a record of an investment professional's conduct. Fifth, we can see no method, save fraudulent concealment[5] or a continuing course of wrongful conduct, which would allow the investment professional to postpone an investor's loss beyond the statute of limitations. Sixth, we do recognize that " 'a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith' "; id.; but we cannot

---

[5] "[I]t is well established that ignorance of the fact that damage has been done does not prevent the running of the statute, except where there is something tantamount to a fraudulent concealment of a cause of action." (Internal quotation marks omitted.) *Rosenfield* v. *I. David Marder & Associates, LLC*, 110 Conn. App. 679, 685, 956 A.2d 581 (2008).

endorse an investor's unquestioning faith in an investment professional's techniques in the same manner as we promote reliance on a litigator's trial tactics. Finally, we recognize the importance of allowing professionals " 'to correct, avoid or mitigate the consequences of an apparent error' "; id., 596; and to avoid unnecessary litigation. We do not, however, see the same opportunities to remedy such an error in the present case as exist during an attorney's representation of a client or a physician's care of a patient.

Thus, support for the plaintiff's claim, if any, is outweighed by the policies that support statutes of limitation. See id. Although allowing a statute of limitations defense may result in meritorious claims being foreclosed, that must be so. A statute of limitations promotes two important interests: "(1) it reflects a policy of law, as declared by the legislature, that after a given length of time a [defendant] should be sheltered from liability and furthers the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability . . . and (2) to avoid the difficulty in proof and record keeping which suits involving older [claims] impose." (Internal quotation marks omitted.) *Haggerty* v. *Williams*, 84 Conn. App. 675, 679, 855 A.2d 264 (2004). Accordingly, we conclude that the court properly refused to extend the continuous representation doctrine to all fiduciary relationships.

The judgment is affirmed.

In this opinion the other judges concurred.